GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, A CORPORATION, PLAINTIFF, v. RITA REALTY CO., A CORPORATION OF NEW JERSEY, DEFENDANT.

Decided March 27, 1939.

For the plaintiff, *John Warren.*

For the defendant, *Saul Nemser.*

BROWN, S. C. C. The above entitled action in ejectment was instituted by the plaintiff mortgagee to recover possession of mortgaged premises situated in Jersey City. The defendant defaulted in the payment of interest and taxes required to be paid under the terms of the mortgage. The defendant in its answer denies the truth of the matters contained in the complaint in accordance with the form prescribed by *R. S.* 2:51-4 and rule 185 of the Supreme Court. The plaintiff moves to strike the answer of the defendant on the ground that it is sham. The defendant does not deny its default in the payment of interest and taxes. The defendant resists the motion on the alleged grounds that the motion cannot be

maintained in an action of ejectment and that the mortgage was made and executed in the State of New York and its construction, interpretation and enforcement should be made in accordance with the laws of that state. An action in ejectment is a statutory proceeding and is governed by the Ejectment act and rules of the Supreme Court. At common law there was no authority for filing a demurrer in an action of ejectment. The defendant was confined and limited to a plea of not guilty with the possible exception of a plea *puis darrein continuance*. The statutes of our state evidently changed this procedure for it was held in *Milberg* v. *Keuthe,* 98 *N. J. L.* 779, that an answer in a suit in ejectment may be stricken under section 15 of the Practice act of 1912 (*Pamph. L.* 1912, *p.* 380) on the ground that it is frivolous or sham. The defendant contends the Milberg case was overruled by the decision in *Ahlemeyer* v. *Miller,* 103 *Id.* 617. Both of these cases involve decisions in the Court of Errors and Appeals and a reading of those decisions, in the light of the statutes pertaining to suits in ejectment as existing at the time the decisions were made, does not support the contention of the defendant. The Milberg case was decided in June, 1923, the statute then in effect relating to sham or frivolous pleadings was section 15, *Pamph. L.* 1912 (at *p.* 380), which provided: "Subject to rules, any frivolous or sham defense to the whole or to any part of the complaint may be struck out; or, if it appear probable that the defense is frivolous or sham, defendant may be allowed to defend on terms. Defendant, after judgment, may appeal from any order made against him under this section." The motion in the Milberg case was to strike the answer as being sham and frivolous which motion was granted under the authority of section 15 of the Practice act of 1912. *Pamph. L.* 1912, *p.* 380. The decision in the Ahlemeyer case was made in May, 1927, and there apparently was no change in the statutory proceeding between the dates of the Milberg and Ahlemeyer decisions. In the Ahlemeyer case the motion before the court was to strike the complaint upon the ground that it disclosed no cause of action. There was not at that time any statutory provision for such a motion; consequently, the decision in the Ahlemeyer case

did not overrule the decision in the Milberg case. The next legislative enactment relating to this subject appears in *Pamph. L.* 1928, *p.* 306, wherein the Practice act of 1912 was amended, particularly section 15, which provided: "(a) Subject to rules, any frivolous or sham defense to the whole or to any part of the complaint may be struck out; or, if it appear probable that the defense is frivolous or sham, defendant may be allowed to defend on terms. Defendant, after final judgment, may appeal from any order made against him under this section. (b) Subject to rules, any frivolous or sham complaint, or any frivolous or sham counterclaim heretofore filed, or which may hereafter be filed, or any portion or count of any such complaint or counter-claim, may be struck out; or if it appear probable that the complaint or counter-claim is frivolous or sham, the plaintiff or counterclaimant may be allowed to proceed therewith on terms. A plaintiff whose complaint, or a counter-claimant whose counter-claim, has in part only been struck out, may, after final judgment, appeal from such order. Whether the striking out of any such complaint or counter-claim, or any part or count thereof, shall be with or without prejudice to the institution of another proceeding at law, based on the same cause or causes of action as were set forth in such complaint or counter-claim, or in the portion or count thereof so stricken out, shall be in the discretion of the court. Such discretion shall be exercised by the court and indicated in the order striking out such complaint or counter-claim or portion or count thereof." Section 3 of the act last mentioned provides that the act applies to any and all suits. The action in the case *sub judice* accrued on November 14th, 1938, and the summons was tested on the 23d day of the same month. The provisions of *Pamph. L.* 1928, *ch.* 151, *p.* 306, was substantially re-enacted in *R. S.* 2:27-124 to 129, inclusive. Section 3 of the act of 1928 was omitted from the Revised Statutes of 1937. This omission, however, does not impair the right to strike an answer in ejectment on the ground that it is sham as the provisions of the Revised Statutes fully provides for this right as well as *Pamph. L.* 1938, *p.* 407. According to the affidavits submitted on the motion the plaintiff is not

a corporation of the State of New Jersey nor did it have an office in the State of New Jersey. The land which was mortgaged was owned by the defendant, a New Jersey corporation, and was situated within this state. The proof further shows that all of the negotiations leading to the execution of the mortgage were carried on in the State of New York including the payment of the consideration and that the mortgage was signed and acknowledged in the State of New Jersey but delivered in the State of New York. The mortgage contained the following provision: "And the mortgagor, for itself, its successors and assigns, covenants and agrees that all the covenants and conditions herein contained, and contained in the bond accompanying this mortgage, shall be construed and interpreted pursuant to the laws of the State of New York." The mortgage also contains the following covenants: "11. That the holder of this mortgage, in any action to foreclose it, shall be entitled, without notice and without regard to the adequacy of any security for the mortgage debt, to the appointment of a receiver of the rents and profits of said premises, and in the event of any default in payment of principal or interest, or upon any default in the performance of any other covenant or condition herein or in the bond accompanying this mortgage contained, such rents and profits are hereby assigned to the holder of this mortgage as further security for the payment of said indebtedness, and thereupon the holder of said bond and mortgage shall be clothed with and shall possess all the rights, remedies and authority of the mortgagor and of the owner of such premises, as the landlord of the mortgaged premises with power to eject or dispossess tenants; to rent or lease said premises or such portions thereof as may be or may become vacant, to keep said premises in repair, and to control and manage said premises as though the holder of said bond and mortgage were the actual owner of the mortgaged premises." For the purpose of deciding the motion to strike in this case the court will assume that the bond and mortgage was made in the State of New York and it was agreed according to its terms that it should be "construed and interpreted" pursuant to the laws of that state. It is contended on the part of the defendant that in the State of

New York before a mortgagee can obtain possession of the mortgaged premises upon default on the part of the mortgagor there must be first commenced an action to foreclose the mortgage. In the instant case there was no action undertaken to foreclose the mortgage. In the State of New Jersey the common law rule that a mortgage created an immediate estate in the mortgagee and vested in him immediately upon the execution and delivery of the mortgage, an actual estate with a right of immediate possession, subject only to be defeated by the payment of the mortgage money has not been adopted by our courts. However, upon breach of condition the mortgagee's estate has all the incidents of a common law title and he has the right to the possession of the mortgaged premises. *Stewart* v. *Fairchild-Baldwin Co.,* 91 *N. J. Eq.* (at *p.* 88) ; 108 *Atl. Rep.* 301. Under the laws of the State of New York it appears that the mortgagee is not entitled to possession of the mortgaged premises until the mortgage is actually foreclosed. The legal propositions involved in this motion not only relate to the rights of the parties but their remedies. The terms of the mortgage are silent on the remedies to be applied unless it can be said that the words "construed and interpreted pursuant to the laws of the State of New York" includes remedies. The reference in the mortgage that it was to be "construed and interpreted" by the law of New York should not be taken as an expression of intention that its validity was to be governed by that law; nor would such intention, if expressed, be controlling. It can only mean that the meaning to be given the terms of the contract were to be governed by New York law. *Commissioner of Internal Revenue* v. *Hyde,* 82 *Fed. Rep.* (2d) 174. In the case of *Provident Savings Bank and Trust Co.* v. *Steinmetz* (*Court of Appeals of New York*), 270 *N. Y.* 129; 200 *N. E. Rep.* 669, it was held that the law concerning foreclosures in the State of New York relates to property located within the state. In *Carpenter* v. *Black Hawk Gold Mining Co.,* 65 *N. Y.* 43, it was held: "Our statute in reference to the sale of mortgaged premises under a power of sale contained in a mortgage has reference *only* to real estate and mortgages recorded in this state." In

*Elliott* v. *Wood*, 45 *Id.* 74, it was held: "The mortgage was not of real property within the state and therefore the power of sale, and proceedings under it were not regulated by the statutes of this state regulating the foreclosure of mortgages by advertisement. 2 *R. S.* 545. That statute relates solely to mortgages of property within the state. The mode of transmitting or transferring title to real property in the Caribbean sea, is not within the scope of the legislation of New York, neither can the courts of this state, except as they may exercise jurisdiction over persons, by any judgment or decree, affect the title to property without the limits of the state. *Lawrence* v. *Farmers' Loan and Trust Co.*, 13 *N. Y.* 200, decided that the statute directed the manner in which property should be sold under a power of sale contained in a mortgage, and must be followed, but the sale was of lands within the state, under a power recorded as required in the county within which the lands were situated, and under a mortgage which permitted a full compliance with the statute." According to the decisions in the State of New York the laws concerning procedure to foreclose mortgages and like proceedings are limited to property located in the State of New York. This legal position is supported by abundant authority. The exclusive jurisdiction which each state possesses over land within its borders requires that its acquisition and transfer be governed by the laws of its *situs* and this rule applies generally to all property classed as immovable and operates between the several states of the United States as well as between countries entirely foreign to each other. The principle of comity does not require a state to regard the laws of any other state, so far as they may affect contracts in relation to real estate situated in the former state. 12 *Corp. Jur.* 477, § 75. Since the lien of a mortgage upon the land can be enforced only in the state or other territorial jurisdiction where the land is situated, the law of the place where the mortgaged premises are controls as to foreclosure proceedings and statutory provisions as to foreclosure does not apply as to lands lying in another state. 41 *Corp. Jur.* 831, § 1005. It seems to be the settled law in the State of New Jersey that the transfer and descent of real property

is covered by the law of the state in which it lies. *Bentley* v. *Whittemore,* 18 *N. J. Eq.* (at *p.* 373), see authorities therein cited including two New York cases. The Bentley decision was overruled by the Court of Errors and Appeals in 19 *Id.* 462, but not the principle of the *lex rei sitæ* as stated in the Chancery decision. It is a general principle that real property or immovables is governed by the law of the place where it is situated. The *lex rei sitæ* is universally recognized. 1916A *L. R. A.* (at *p.* 1012). It is also a general principle of law that the *lex fori,* or law of the jurisdiction in which relief is sought, controls as to all matters pertaining to remedial, as distinguished from substantive rights. 12 *Corp. Jur.* 423. There are exceptions to the principle that real property is governed by the law of the place where it is situated. *Varick* v. *Crane,* 4 *N. J. Eq.* 128, as in the matter of assignments as appears in *Bentley* v. *Whittemore,* 19 *Id.* 462. Another exception are questions affecting the consideration which are usually determined by the *lex loci contractus.* The validity of a stipulation for attorneys' fees in a mortgage are not necessarily governed by the law of the place where the mortgaged land was situated. Copious references on the matter of exceptions to the principle that real property is governed by law at the place where situated may be found in 1916A *L. R. A.* (beginning at *p.* 1011). It may safely be accepted that the legal principle of *lex rei sitæ* applies only so far as it concerns laws that relate distinctly and primarily to real property or real property contracts or where a conveyance is executed between citizens of a state for land in another state, in so far as it treats of covenants which never attach to the soil but are essentially personal and in these cases the laws of the state where the contract is made should as a general rule control. The suit in ejectment in the instant case is a proceeding that relates distinctly to the real property in question. The motion to strike the answer as sham is allowed, and an order may be entered in accordance with this determination.