No. 59,533

FIRST NATIONAL BANK IN WICHITA, *Appellant,* v. MARION J. FINK, individually and formerly doing business as M & F Oil and Douglas Motors; DELORIS M. FINK; BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *et al., Defendants,* and ROBERT H. SOUDERS, *Defendant/Appellee.*

(736 P.2d 909)

Opinion filed May 1, 1987.

*Philip L. Bowman,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause, and *Laura L. Ice,* of the same firm, was with him on the briefs for appellant.

*Herbert H. Hopper,* of Wichita, argued the cause and was on the brief for appellee Robert H. Souders.

*Anne L. Baker,* of Eidson, Lewis, Porter & Haynes, of Topeka, was on the *amicus curiae* brief for Kansas Bankers Association.

*Gerald L. Goodell* and *Les E. Diehl,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the *amicus curiae* brief for Kansas League of Savings Institutions.

The opinion of the court was delivered by

PRAGER, C.J.: This appeal involves the priority of liens in a mortgage foreclosure action. The facts in the case are not in dispute and essentially are as follows: The defendants, Marion J. Fink and Deloris M. Fink, are the mortgagors on two mortgages covering the same real estate located in Sedgwick County. This dispute is between the First National Bank in Wichita (Bank), the plaintiff/appellant, and Robert H. Souders, the defendant/appellee, who are the holders of mortgages on the property.

The mortgage liens were created as a result of loans made to the Finks in the following chronological order:

On November 22, 1977, the Finks borrowed money from the First National Bank in order to purchase certain real estate. The defendants signed a promissory note in the principal amount of $24,506 plus interest, and executed a mortgage on the real estate described as follows:

"Lot 4, North Half of Lot 5, Block 10 Beverly Manor, Sedgwick County, Kansas."

The mortgage, which was recorded on January 26, 1978, contains a future advance clause or "dragnet clause," which provided as follows:

"(7) That this mortgage secures the payment of any and all existing and future notes, loans, advances and any renewal or renewals of note/s and each and all of the payments and obligations thereunder, even though the indebtedness of Mortgagors to Mortgagee from time to time be reduced below the maximum amount above stated or be paid in full and if Mortgagee shall thereafter make loans or advances to Mortgagors, such loans or advances thereafter made shall nevertheless be secured by this mortgage until this mortgage is released of record."

On July 30, 1979, the Finks executed a second mortgage on the same real estate in favor of defendant Souders in the principal amount of $30,000 plus interest. This second mortgage was recorded on August 23, 1979.

On or about October 28, 1983, and January 23, 1984, the Bank made two additional loans to the Finks in the principal amounts of $6,472 and $13,144, respectively. The Finks executed a promissory note and a mortgage to the bank for each loan. On the face of both the 1983 and the 1984 notes, the parties agreed as follows:

"SECURITY AGREEMENT

"FOR VALUABLE CONSIDERATION, Borrower hereby grants unto Bank a security interest in the property (Collateral) described below together with any and all additions thereto, substitutions therefor, and proceeds therefrom:

"DESCRIPTION OF COLLATERAL

"Real estate mortgage dated November 22, 1977, on the following described property:

"Lot 4, North Half of Lot 5, Block 10, Beverly Manor, Sedgwick County, Kansas."

The Finks defaulted on their loans, and the Bank brought an action on the notes and for foreclosure of its mortgage. Defendant Souders was made a party along with other creditors not involved in this appeal. A dispute arose between the First National Bank and Souders as to the priorities of their respective mortgage liens.

The district court found that the Bank's mortgage lien had priority over the mortgage lien of Souders only as to the amount of any unpaid balances due on the original 1977 loan. The court ruled that the Bank made the later loans to the Finks with notice of defendant Souders' intervening mortgage and that reference to the 1977 mortgage on the face of the 1983 and 1984 notes would not defeat the priority of Souders' lien. The trial court established the order of priority between the mortgage liens of the Bank and Souders as follows:

(1) The unpaid balance of the Bank's 1977 purchase money mortgage in the amount of $9,152 plus interest;

(2) defendant Souders' mortgage in the amount of $39,182 plus interest;

(3) the Bank's 1983 note in the amount of $8,617 plus interest; and

(4) the Bank's 1984 note in the amount of $14,886 plus interest.

The Bank perfected a timely appeal, and the case was transferred to the Supreme Court for determination.

Defendant Souders initially raises a jurisdictional issue. He takes the position that the plaintiff Bank is precluded from prosecuting this appeal, because the Bank acquiesced in the judgment below by voluntarily signing the journal entry in the

district court and accepting benefits therefrom. We find this point to be without merit. The record shows that all the Bank's attorneys did in the district court was to approve the journal entry of judgment. The Bank neither made voluntary payments nor accepted benefits under the judgment in a manner contrary to its position on this appeal.

In *McDaniel v. Jones,* 235 Kan. 93, 679 P.2d 682 (1984), this court held the general rule is that a party to litigation who acquiesces in the judgment of the trial court, either by assuming the burdens of such judgment or by accepting the benefits thereof, will be deemed to have acquiesced in such judgment and may not thereafter adopt an inconsistent position and appeal from such judgment. The gist of acquiescence sufficient to cut off a right of appeal is voluntary compliance with the judgment. *McDaniel* states that where a judgment or decree involves distinct and severable matters, demands, or issues, an acceptance of the burdens or benefits of one or more parts thereof will not prevent an appeal as to the remaining contested matters, demands, or issues.

Thus, in order for an appellate court to hold that a party has acquiesced in a jugment, it must be shown that the appellant has either assumed burdens or accepted benefits of the judgment contested on the appeal. In the present case, the Bank did neither. All that the Bank's attorneys did was approve the journal entry. They did not in any way act on behalf of the Bank in a manner inconsistent with its position in the trial court or on this appeal. We find the defendant's jurisdictional issue to be without merit.

We turn now to the question of the priority of the mortgage liens. It is the position of defendant Souders that the subsequent loans made by the Bank to the Finks in 1983 and 1984 were not secured by the 1977 mortgage, because the subsequent advances were made for unrelated business purposes, were optional, nonobligatory loans, and were made by the Bank with notice of the Souders' 1979 mortgage lien. The trial court adopted, in substance, the position of defendant Souders.

We should first consider the Kansas statutes and previous cases on the subject. K.S.A. 1986 Supp. 9-1101(4) authorizes a Kansas bank:

"(4) to make all types of loans, including loans on real estate, subject to the loan limitations contained in this act. Every real estate loan shall be secured by a mortgage or other instrument constituting a lien, or the full equivalent thereof, upon the real estate securing the loan, according to any lawful or well recognized practice, which is best suited to the transaction. *The mortgage may secure future advances. The lien of such mortgage shall attach upon its execution and have priority from time of recording as to all advances made thereunder until such mortgage is released of record. The lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.*"

K.S.A. 58-2336 also provides for the securing of future advances in the following language:

"58-2336. **Liens of mortgages securing loans upon real estate; providing for the securing of future advances; priority of lien.** Every mortgage or other instrument securing a loan upon real estate and constituting a lien or the full equivalent thereof upon the real estate securing such loan, according to any lawful or well recognized practice, which is best suited to the transaction, *may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from time of recording as to all advances made thereunder until such mortgage is released of record: Provided,* That the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage." (Emphasis supplied.)

The trial court in this case relied on K.S.A. 58-2222, which provides, in substance, that a mortgage shall from the time of filing the same with the register of deeds for record impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

The appellate courts of Kansas have discussed the effect of future advance clauses in mortgages on several occasions. In *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P.2d 1091 (1958), the question on appeal was the priority between a mortgage given to secure future advances and a mechanic's lien covering labor and materials for the construction of a house on the mortgaged premises after the recording of the mortgage but before the making of advances by the mortgagee. The mortgage was given in connection with a loan for the construction of the house. This court held that a mortgage to secure future advances is valid and will be judicially enforced. Advances made under such a mortgage, at least *if made pursuant to an agreement to make them,* have priority over mechanic's liens which attach after the recording of the mortgage but before the making of the advances.

In *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178, 519 P.2d 618 (1974), this court again recognized the validity of a future advance provision or dragnet clause. It was held that future advances made pursuant to a dragnet clause fall within the contemplation of the parties and are secured under the mortgage containing such clause. Dragnet clauses are not, however, highly regarded in equity and shall be carefully scrutinized and strictly construed. In the absence of clear evidence of a contrary intention, a mortgage containing a dragnet-type provision will not be extended to cover subsequent advances or loans *unless they be of the same kind and quality or relate to the same transaction or series of transactions or unless the document evidencing the same refers to the mortgage as providing security therefor.* In *Mounkes,* the court refused to extend the prior mortgage as security for the two subsequent loans, because the later loan instruments contained no reference to the prior mortgage and were unrelated to the purposes of the original mortgage. The evidence in the record indicated that the subsequent advances were, in fact, signature loans on which there is generally no security whatsoever.

*First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268 (1982), again involved an appeal in a mortgage foreclosure action with regard to a future advance clause. The 1976 mortgage covered a loan of $47,000 and contained a dragnet clause for future advances not to exceed $400,000. Shortly after execution of the $47,000 note and mortgage, the mortgagors consolidated their debts and executed another note for $274,664. In the lower left-hand corner of the note appeared this statement: "NOTE SECURED BY S/A 509 head of cattle, machinery & equip., Financial Stmt., R.E. Mtg. dtd. 1/30/76." Thereafter the mortgagors executed some additional renewal notes. The trial court found that the total principal and interest owing in the amount of $206,414 was secured by the 1976 mortgage. The Court of Appeals reversed the trial court, holding that the statement on the face of each note that it was secured by the real estate was not a sufficient reference to the mortgage to subject the mortgage to the full amount of the subsequent notes. This court reversed the Court of Appeals.

Syllabus ¶ 1 of *Lygrisse* states the rule to be applied in

determining the legal effect of a dragnet clause in the following language:

"Subsequent debts may be secured under the dragnet clause of a real estate mortgage in either of two ways: (1) by specifically stating on the face of the new note that it is secured by the prior mortgage; or (2) by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage."

Following *Lygrisse,* the Court of Appeals handed down *Fidelity Savings Ass'n v. Witt,* 8 Kan. App. 2d 640, 665 P.2d 1108 (1983), where certain mechanic's lienholders urged the Court of Appeals to adopt a rule that when future advances are optional with the lender, the funds so advanced shall be given priority only from the date of each advance and not from the date the mortgage instrument was recorded. They recognized the general rule that where the making of future advances is obligatory rather than optional, the lien of the mortgagee receives priority from the date of the recording of the mortgage. The Court of Appeals reached the conclusion that the language of K.S.A. 58-2336 was unambiguous and all-encompassing. It held that under K.S.A. 58-2336, when advances are made pursuant to a future advance clause in a mortgage, the advances have priority over liens which attach after the recording of the mortgage but before the advances are made, irrespective of whether the advances are designated as "optional" or "obligatory." Future advance clauses are also discussed in *Home State Bank v. Johnson,* 240 Kan. 417, 729 P.2d 1225 (1986).

Based upon the Kansas statutes and the cases cited above, we have no hesitancy in holding that the trial court erred in finding that mortgage lien of defendant Souders was prior to the liens created by the Bank's 1983 and 1984 notes, each of which specifically stated on the face of the instrument that it was secured by the prior 1977 mortgage. The priority of the Bank's lien is limited, however, to the principal of the 1977 mortgage, $24,506.39 plus interest thereon, as required by K.S.A. 58-2336. The lien of the Souders mortgage is held to be prior to any sums owing the Bank in excess of that amount.

The judgment of the district court is reversed and remanded for further proceedings.