No. 65,460

MARK TWAIN KANSAS CITY BANK, *Appellant*, v. DANIEL J. CATES, JUHREE R. CATES, JOSEPH A. CATES, ELLEN CATES, and CATES SHEET METAL, INC., *Appellees*.

(810 P.2d 1154)

Opinion filed May 10, 1991.

*Joel K. Goldman*, of Husch, Eppenberger, Donohue, Cornfeld & Jenkins, of Kansas City, Missouri, argued the cause, and *David B. Young*, of the same firm, was with him on the briefs for appellant.

*Curtis L. Tideman*, of Lathrop Norquist & Miller, of Kansas City, Missouri, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Daniel J. Cates and Juhree R. Cates defaulted on a $600,000 note for a business loan obtained from Mark Twain Kansas City Bank (Bank), a Missouri bank. The Bank instituted foreclosure proceedings on the mortgage the Bank held on the Cates' home in Kansas. The Bank claims that a future advance clause in a prior $200,000 mortgage secured the subsequent $600,000 loan it had made to the Cates. The Cates counterclaimed against the Bank. The Bank moved for partial summary judgment. The Cates also moved for partial summary judgment, claiming the mortgage only secured the Bank's $200,000 note, which had been discharged. The district court found (1) under the terms of the mortgage contract, the mortgage is to be construed according to Missouri law and the foreclosure lien created by the mortgage is to be governed by Kansas law; (2) the amount secured by the mortgage was limited to $200,000; and (3) the mortgage did not secure the Bank's subsequent $600,000 loan to the Cates. The district court granted partial summary judgment to the Cates and dismissed the Bank's foreclosure action. The Bank appealed, and the case was transferred to this court pursuant to K.S.A. 20-3018(c).

This case arose from a series of financial transactions between the parties. From 1986 until 1988 the Bank loaned the Cates $1,300,000 to finance the construction of their home and a business investment.

On December 22, 1986, the Cates executed two promissory notes to the Bank. One promissory note was for $500,000 and was to be paid in equal monthly installments with the last payment due on January 1, 1997. The second promissory note of $200,000 was to be paid on January 15, 1987. Each note stated that it was a single advance loan designated as "CONSUMER: PAY PERSONAL DEBTS." Both loans financed the construction of the Cates' new home and each loan was secured by a separate mortgage on the Cates' residence. On January 15, 1987, the parties renewed the $200,000 note, with the renewal note to

mature on April 15, 1987. On April 15, 1987, the note was again renewed and was to mature on June 12, 1987.

On June 12, 1987, two transactions occurred. First, the Bank loaned the Cates an additional $600,000. The $600,000 note states that its purpose is "BUSINESS: FUND EQUITY INVESTMENT IN CANDLEWYCK APARTMENT PROJECT." On the face of the note there is a box which indicates it is for the Bank's internal use. Typed in the box is a statement the note is secured by "KANSAS MORTGAGE AND SECURITY AGREEMENT DATED 12/22/86," in addition to certain other collateral. Payment on this note was due October 1, 1987. When the $600,000 note was executed on June 12, 1987, the $500,000 and the $200,000 notes and both mortgages executed December 22, 1986, were still in effect. The $600,000 note does not reflect which mortgage secured the new loan.

In addition to executing the new $600,000 note on June 12, 1987, the $200,000 note was extended and modified. A document entitled "Modification of Note" recites that the Cates had requested that the Bank allow them to borrow "up to the maximum amount of the principal on the note more than one time." The modification agreement proposed to change the original $200,000 loan agreement to an open line of credit, if certain conditions were met. The contract states:

"Open End Credit: You and I agree that I may borrow up to the maximum amount of principal, Two Hundred Thousand & 00/100 ($200,000.00), more than one time. This feature is subject to all other conditions and *expires no later than October 15, 1987.*" (Emphasis added.)

Without stating to which of the two existing mortgages this contract applied, the contract further provided that any future advances made by the Bank under this agreement were to be secured by the mortgage.

To obtain the credit provided under the "Modification of Note" agreement, the parties executed a "Line of Credit Agreement" containing a typewritten addendum which provides:

"Borrower agrees to make a principal payment of $199,990.00 on July 15, 1987. Borrower agrees that no advances will be made under this agreement by Bank if a balance is outstanding on a certain promissory note Borrower delivered to Bank on June 12, 1987, in the amount of $600,000.00. Borrower

hereby grants the Bank the right to unilaterally draw on the line of credit to make principal payments on said $600,000.00 without notice to Borrower."

Neither the $200,000 mortgage nor the $500,000 mortgage were amended or modified to reflect it secured a line of credit other than the original loan.

On July 15, 1987, the Cates failed to make the $199,990.00 payment required by the "Additional Terms" agreement to secure their line of credit. In fact, the Cates did not make any payments on the principal of the $200,000 loan during 1987.

On October 1, 1987, the $600,000 note matured. The Bank renewed the note and extended its maturity date to February 1, 1988. On October 15, 1987, the agreement allowing the Cates a line of credit expired. Since the Cates had never paid down the original $200,000 loan, they never obtained a line of credit with the Bank. On February 1, 1988, the $600,000 note again came due. Again, the Cates failed to pay the note.

On March 7, 1988, the Cates paid off the $500,000 note. The mortgage securing that note was released by the Bank on March 25, 1988.

On March 8, 1988, a mortgage securing a $206,000 loan to the Cates from Joe and Ellen Cates was recorded. On March 10, 1988, the Cates paid to the Bank the sum equal to the outstanding balance on the $200,000 note and requested that the mortgage securing that loan be released. After accepting the payment, the Bank refused to release the mortgage and subsequently filed the foreclosure action, claiming that the future advance clause of the $200,000 mortgage also secured the Cates' subsequent $600,000 note.

After each of the parties filed motions for summary judgment, the district judge found (1) although Missouri law applied under the terms of the contract, under Missouri or Kansas law, the future advance clause of the December 22 $200,000 mortgage did not secure the $600,000 loan; (2) even if the mortgage secured both the $200,000 and the $600,000 note, the amount secured by the mortgage could not exceed $200,000; and (3) the mortgage did not secure the $600,000 note. After finding that the Bank had no valid mortgage to enforce, the district judge dismissed the foreclosure action against the Cates with prejudice. The action

on the $600,000 promissory note against the Cates by the Bank and the Cates' counterclaims against the Bank are still pending.

A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. The record must also reflect that the moving party is entitled to judgment as a matter of law. *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, Syl. ¶ 5, 695 P.2d 444 (1985). The burden of proving that no genuine issue of material fact exists is on the moving party. The record is viewed in the light most favorable to the party against whom the motion is directed. *Glenn v. Fleming*, 247 Kan. 296, 304, 799 P.2d 79 (1990). The granting of summary judgment is improper where there are genuine issues of material fact which are undermined. *Willard v. City of Kansas City*, 235 Kan. 655, 657, 681 P.2d 1067 (1984). If factual issues do exist, they must be material to the case to preclude summary judgment. *Bacon v. Mercy Hosp. of Ft Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988).

When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. K.S.A. 1990 Supp. 60-256(e). In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. An issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact could not affect the judgment, it does not present a genuine issue of material fact. *Miller v. Foulston, Siefkin, Powers, & Eberhardt*, 246 Kan. 450, Syl. ¶ 2, 790 P.2d 404 (1990).

Regardless of the construction of a written contract made by the trial court, on appeal a contract may be construed and its legal effect determined by the appellate court. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

## CHOICE OF LAW

The Bank claims that the district court erred in applying Missouri law to the mortgage contract. Paragraph 35 of the mortgage provides:

"This Mortgage and the terms hereof, and the Obligations and the terms thereof, are Missouri contracts and the same shall be governed by and construed according to the laws - of the State of Missouri, except that the enforcement and foreclosure of the lien created hereunder shall be governed by and construed according to the laws of the State of Kansas."

The Bank argues that the district court failed to apply the rules of *lex loci rei sitae* (local laws always determine the rights and obligations of parties to real property) and *lex loci* (a security interest in land is governed by the local law of the situs regardless of the language in the mortgage contract). As authority the Bank cites Restatement (Second) of Conflict of Laws § 222 (1969), which provides:

"§ 222. The General Principle
"The interests of the parties in a thing are determined, depending upon the circumstances, either by the 'law' or by the 'local law' of the state which, with respect to the particular issue, has the most significant relationship to the thing and the parties under the principles stated in § 6."

The Bank also cites Restatement (Second) of Conflict of Laws, §§ 223, 228 (1969), which provide:

"§ 223. Validity and Effect of Conveyance of Interest in Land
"(1) Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs.
"(2) These courts would usually apply their own local law in determining such questions."
"§ 228. Mortgage on Land
"(1) Whether a mortgage creates an interest in land and the nature of the interest created are determined by the law that would be applied by the courts of the situs.
"(2) These courts would usually apply their own local law in determining such questions."

The Cates agree with the Bank's recital from the Restatement, but note that this is only a partial recital. The Cates point out that Restatement (Second) of Conflict of Laws § 187 (1969) concludes:

"§ 187. Law of the State Chosen by the Parties.
"(1) *The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.*

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

"(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law." (Emphasis added.)

The Bank cited *Guardian Life Ins. Co. v. Rita Realty Co.*, 17 N.J. Misc. 87, 5 A.2d 45 (1939), as authority to the district court. In *Guardian*, the mortgage document was negotiated in New York but the property was located in New Jersey. The mortgage clause stated that "[A]ll the covenants and conditions herein contained, and contained in the bond accompanying this mortgage, shall be construed and interpreted pursuant to the laws of the State of New York." 17 N.J. Misc. at 90. The *Guardian* court stated that New York law concerning procedures to foreclose mortgages is limited to property located in New York. 17 N.J. Misc. at 92.

The district court noted that the *Guardian* court followed the general rule that the mortgage is to be interpreted using the substantive law of the state where the mortgage is signed, but foreclosure of that mortgage must be in accordance with the procedural law of the state where the property is located. The district court observed that here the parties were not disputing the procedure to foreclose the mortgage and determined under the agreement that Missouri law was to be applied.

It is not unusual for commercial transactions to traverse state lines. Although the Uniform Commercial Code, K.S.A. 84-1-101 *et seq.*, does not apply to mortgages, it does state our legislature's intent that territorial restrictions should not hinder commerce. Under the Kansas Uniform Commercial Code, when a transaction bears a reasonable relation to Kansas and also to another state, the parties are allowed to contract that the laws of Kansas or the other state will govern the rights and the duties of the parties.

K.S.A. 84-1-105. The same public policy applies to a loan and mortgage executed in Missouri on land located in Kansas. The district court correctly interpreted paragraph 35 to require Missouri law be followed when determining whether the Bank's $600,000 loan was secured by the future advance clause of the $200,000 mortgage.

In addition to interpreting paragraph 35 of the mortgage as requiring application of Missouri law, the district court, in its analysis, determined the validity of the Bank's mortgage future advance clause under both Missouri and Kansas law and found the result would be the same.

The mortgage states:

"BORROWER HEREBY FURTHER PROMISES, REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS: . . .

"2) Upon Borrower's request and at Lender's sole option and discretion, *Lender may make future advances and Borrower may incur future obligations at any time and from time to time immediately following the date hereof. Any such future advance or future obligation shall constitute an Obligation secured hereby.*" (Emphasis added.)

## MISSOURI LAW

Future advance or dragnet clauses in Missouri are authorized and governed by Mo. Rev. Stat. § 443.055 (1986). The pertinent sections of that statute are:

"2. . . . The fact that an instrument secures future advances or future obligations *shall be clearly stated on the face of the instrument,* or on the face of any amendment to an instrument if such amendment is made to cause the original instrument to secure future advances or future obligations, and the instrument *shall state the total amount of the obligations* which may be secured. The total amount of obligations that may be secured by such an instrument may decrease or increase from time to time, but except as to advances made pursuant to subsection 3 of this section, *the total principal amount of the obligation secured may not exceed the face amount as stated in the instrument.*

. . . .

"12. No future advance or future obligation shall be secured by an instrument for purposes of this section unless the note, contract, guarantee or other evidence of indebtedness under which such future obligation or future advances were incurred *shall state on its face that such note, contract, guarantee or other evidence of indebtedness is secured by such instrument* and shall identify such instrument by date of execution of such instrument, provided that such note, contract, guarantee or other evidence of indebtedness shall enjoy the security of such instrument as otherwise provided

by law without reference to this section if no reference is made therein to this instrument. *The provisions of this section shall not govern any instrument or any supplement or amendment to an instrument unless such instrument, supplement or amendment shall clearly state on its face that it is to be governed by this section."* (Emphasis added.)

Prior to the enactment of § 443.055, there were no Missouri cases determining how the Missouri common law would treat future advance clauses in mortgages. One legal writer found that the validity of future advance clauses under Missouri common law would be handled similarly to the state's statutory requirements. This authority stated:

"Unlike construction and line of credit mortgages, the dragnet mortgage usually does not contemplate future advances. Dragnet clauses, which appear in all types of mortgages, secure any and all debts that the mortgagor owes or may owe to the mortgagee. It is unclear whether such clauses are valid in Missouri or whether advance clauses claimed under them will enjoy priority over intervening liens. Most jurisdictions recognize the validity of dragnet clauses but construe them strictly, often holding the claimed advance to be unsecured by the mortgage. Even if they find the advances secured, most courts treat them as optional advances by subordinating them to intervening liens. It seems likely that Missouri will follow this approach . . . .

. . . .

"To be governed by [Mo. Rev. Stat. § 443.055] statute, a mortgage must clearly state on its face that it secures future advances and must list the total amount that may be secured thereunder. The mortgage and its amendments must clearly state that they will be governed by section 443.055. *Failure to follow these requirements will place the mortgage under the control of prior Missouri law.*

. . . .

"As with line of credit mortgages, neither statutes nor decisions previously offered an answer to the validity of dragnet clauses or the priority of advances under such clauses. The new legislation, however, provides a procedure to deal with dragnet clauses. Any instrument under the statute must state that it secures future advances and must set out the total amount secured. Thus, prior indebtedness cannot be secured by a dragnet mortgage. Likewise, unanticipated advances will not be secured by a dragnet clause because advance consideration is required for compliance with the requirements of setting out the amount and the terms of the mortgage. A mortgagee who previously complies with the technical requirements, however, can secure even unanticipated advances by filing a proper amendment increasing the total indebtedness to be secured, but those advances will take priority only from the time the amendment is recorded. A mortgagee who seriously intends to utilize a dragnet clause may be better off under the new legislation *given the absence of common law and the possibility that the courts will*

*hold that the clause does not secure the particular advance.* A mortgagee who includes such a clause but does not really anticipate utilizing it may be unable to take advantage of the statute, however, if he does not follow its requirements from the outset." (Emphasis added.) Comment, Future Advances in Missouri, 49 Mo. L. Rev. 103, 113-19 (1984).

The district court observed that the $200,000 mortgage did not specifically state that its obligations and terms are to be construed or governed according to Mo. Rev. Stat. § 433.055. Because there are no Missouri decisions prior to the enactment of § 443.055, the district court first looked to other jurisdictions that have construed dragnet clauses in mortgages and observed that those jurisdictions have refused to extend security to debts which were unrelated or unanticipated by the parties. See, *e.g.*, *Emporia State Bank v. Mounkes*, 214 Kan. 178, 184, 519 P.2d 618 (1974) (unclear intent and distinct debts); *Freese Leasing v. Union Trust & Sav. Bank*, 253 N.W.2d 921, 926-27 (Iowa 1977) (unrelated debts and intent unclear); *Canal Nat. Bank v. Becker*, 431 A.2d 71, 74 (Me. 1981) (intent unclear).

After its review of the law of other jurisdictions, the district court reasoned that, in the absence of prior Missouri decisions, the Missouri courts would conform Missouri common law to the public policies set forth in § 443.055 and impose similar or identical restrictions on the use of dragnet clauses in mortgages. The district court then determined that Missouri law requires that an instrument which secures future advances "shall . . . clearly [state] on the face of the instrument" the total amount of the obligations which may be secured. The district court found Mark Twain had failed to modify the mortgage document securing the $200,000 loan to reflect that the parties intended the mortgage to secure in excess of $200,000, as required by Missouri law. The district court found the mortgage could not secure any amount in excess of $200,000.

## KANSAS LAW

In Kansas, promissory notes and mortgages are contracts between the parties, and rules of construction applicable to contracts apply to them. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, Syl. ¶ 3, 647 P.2d 1286 (1982). The primary rule in interpreting promissory notes and mortgages is to determine the intention of the parties, and that intention must prevail; such

intention is to be determined from an examination of both the mortgage and note, not from each one separately. *Carpenter v. Riley*, 234 Kan. 758, 763, 675 P.2d 900 (1984).

The Bank argues that the face of the $600,000 note states it is secured by the $200,000 mortgage. The district court noted that in Kansas future advance mortgages are governed by K.S.A. 1990 Supp. 9-1101 and K.S.A. 58-2336. K.S.A. 1990 Supp. 9-1101(4) states:

"Every real estate loan shall be secured by a mortgage or other instrument constituting a lien, or the full equivalent thereof, upon the real estate securing the loan, according to any lawful or well recognized practice, which is best suited to the transaction. The mortgage may secure future advances. The lien of such mortgage shall attach upon its execution and *have priority* from time of recording as to all advances made thereunder until such mortgage is released of record. *The lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.*" (Emphasis added.)

K.S.A. 58-2336 states:

"**Liens of mortgages securing loans upon real estate; providing for the security of future advances; priority of lien.** Every mortgage or other instrument securing a loan upon real estate and constituting a lien or the full equivalent thereof upon the real estate securing such loan, according to any lawful or well recognized practice, which is best suited to the transaction, *may secure future advances and the lien* of such mortgage shall attach upon its execution and have *priority* from time of recording as to all advances made thereunder until such mortgage is released of record: *Provided, that the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.*" (Emphasis added.)

The Bank argues that under the future advance clause all outstanding bank loans are secured by the mortgage. It claims that the $200,000 limitation stated in the mortgage is to be used to determine priority among creditors. The Bank states that $200,000 of its $600,000 loan had priority over Joe and Ellen Cates' $200,000 loan and that the loan from Joe and Ellen Cates then had priority over the balance of the Bank's loan. The Cates claim that the district court correctly found that the lien of any future advance clause is limited to the amount stated in the mortgage. As authority, both parties cite *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, 736 P.2d 909 (1987), where this court interpreted K.S.A. 58-2336 and K.S.A. 1986 Supp. 9-1101(4).

In *Fink*, the mortgagors borrowed $24,506.39 from First National Bank and executed a real estate mortgage for that sum. The mortgage contained a future advance clause. The Finks later borrowed $30,000 from Souders and executed a second mortgage. Subsequent to Souders' loan, the bank made additional loans to the Finks of $6,472 and $13,144. The Finks executed a promissory note and a mortgage to the bank for each loan. Each of the notes stated:

"SECURITY AGREEMENT

"FOR VALUABLE CONSIDERATION, Borrower hereby grants unto Bank a security interest in the property (Collateral) described below together with any and all additions thereto, substitutions thereof, and proceeds therefrom:

"DESCRIPTION OF COLLATERAL

"Real estate mortgage dated November 22, 1977, on the following described property:

"Lot 4, North Half of Lot 5, block 10, Beverly Manor, Sedgwick County, Kansas." 241 Kan. at 323.

After the Finks defaulted on their loan, the bank foreclosed. The bank and Souders disputed the priority of their liens. We found that the bank's lien had priority but was limited by K.S.A. 58-2336 to the principal stated in the 1977 mortgage, $24,506.39 plus interest, and that Souders' second mortgage was prior to any sums owing the bank in excess of the 1977 mortgage. 241 Kan at 327.

The Bank misconstrues our holding in *Fink*. The district court correctly found that K.S.A. 58-2336 limits the lien to the maximum amount stated in the mortgage. The maximum amount stated in the mortgage was $200,000, not $600,000 as claimed by the Bank.

In *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, we discussed how a subsequent loan may be secured under a dragnet clause in a mortgage. *Lygrisse* involved a mortgage foreclosure action and a mortgage with a future advance clause. The 1976 mortgage covered a loan of $47,000 and contained a dragnet clause for future advances not to exceed $400,000. Subsequent to the $47,000 loan, the mortgagors consolidated their debts and executed another note for $274,664. In the lower left-hand corner of the consolidated note appeared this statement:

"NOTE SECURED BY S/A 509 head of cattle, machinery and equip., Financial Stmt., R. E. Mgt., dtd. 1/30/76." This recital was on the face of the note when it was executed and clearly expressed the intention of the parties that the debt represented by the note was secured by the mortgage.

The district court in *Lygrisse* found that the Lygrisses' subsequent notes of $206,414, including interest, were secured by the 1976 mortgage. The Court of Appeals reversed, finding that only the $47,000 loan plus interest was secured by the mortgage. It found that the statement on the face of each note, that the note was secured by the real estate mortgage, was not a sufficient reference to the mortgage for the mortgage to secure the subsequent consolidation of the notes. We observed that subsequent debts may be secured under the dragnet clause of a real estate mortgage in either of two ways: (1) by specifically stating on the face of the new note that it is secured by the prior mortgage; or (2) by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage. We observed that all the notes except one, which the district court found to be an inadvertent error, referred to the January 30, 1976, mortgage. We affirmed the district court and reversed the Court of Appeals.

Future advance clauses are also discussed in *Home State Bank v. Johnson*, 240 Kan. 417, 729 P.2d 1225 (1986). In *Johnson,* the issue was whether the mortgage secured more than the amount on the face of the mortgage. The mortgage was given to secure the sum of $100,000 plus future advances. The mortgage stated that the loan and advances "shall at no time exceed [$100,000]." 240 Kan. at 419. The subsequent loan agreement between the parties stated that the consideration "is the further extension of credit by Bank to Borrower, all as provided by the Real Estate Mortgage previously filed for record." 240 Kan. at 420. The *Johnson* court stated that "the best and most persuasive evidence of the intention of the parties who enter into a written agreement is that which is expressed by the terms of that agreement." 240 Kan. at 426. It determined the mortgage was never intended to secure an amount in excess of $100,000. 240 Kan. at 426.

Both the Bank and the Cates agree that the $600,000 note was to finance a business venture and was not of the same kind or quality as the $200,000 note which financed the construction of the Cates' home. The question is whether the July 12 $600,000 promissory note sufficiently refers to the $200,000 mortgage so that the mortgage provides security for $200,000 of the subsequent $600,000 note.

The Bank purchased a printed form for its note. When reading the note purchased and prepared by the Bank, the word "I" in the form refers to the Cates, the borrowers, and the word "You" refers to the Bank, the lender. The $600,000 note, in a marked box, states: "SECURITY: This note is secured by: SECURITY AGREEMENT (COLLATERAL PLEDGE AGREEMENT) DATED 6/12/87, ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL DATED 6/12/87, KANSAS MORTGAGE AND SECURITY AGREEMENT DATED 12/22/86." The box also contains: "(This section is for your internal use. It may not include every agreement or item of collateral securing this note. You will not lose any security by omitting it from this section.)" To the right of this box are two lines which are designated signature lines where the borrowers say, "I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON THE OTHER SIDE)." The other side of the document states, "SECURITY: The portion of this form identifying agreements securing this note is for your internal reference only. The fact that you do not list an agreement in that portion of the form does not mean that the agreement does not secure this note."

According to the Bank, the $200,000 mortgage is referenced on the face of the subsequent $600,000 note and meets the requirements set forth by this court in *Lygrisse*. We disagree. The $600,000 note refers to a "KANSAS MORTGAGE AND SECURITY AGREEMENT DATED 12/22/86." However, the Cates executed two mortgages on that date, one for $500,000 and the other for $200,000. Both mortgages contain the same future advance clauses. The $600,000 note does not state which of the two mortgages secures the note. The only portion of the note which refers to a mortgage is designated for internal use for the Bank and is not part of the agreement between the parties.

The loan agreement does not comply with the requirements set out in *Lygrisse* that, to secure subsequent debts under the dragnet clause of a real estate mortgage, one must specifically state on the face of the new note that it is secured by the prior mortgage or show that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage. Here, the subsequent loan agreement neither specifically states on its face which of the prior mortgages secures the note nor shows that the subsequent debt is of the same kind or character or a part of the same transaction or series of transactions originally secured by the mortgage. Antecedent debts may be secured by a mortgage containing a dragnet or other advance clause only if the antecedent debts are clearly identified in the mortgage. The rule has no application when subsequent notes merely indicate that the antecedent debts are intended to be secured. There was no genuine issue as to any material fact, and the district court correctly determined as a matter of law that the mortgage did not secure the $600,000 note and granted summary judgment.

Affirmed.