No. 59,099

THE HOME STATE BANK, LEWIS, KANSAS, *Appellee*, v. CURTIS R. JOHNSON and DONNA JO JOHNSON a/k/a DONNA JOHNSON, Husband and Wife, *Appellants*.

(729 P.2d 1225)

Opinion filed December 11, 1986.

*W. Thomas Gilman*, of Redmond, Redmond, O'Brien & Nazar, of Wichita, argued the cause and was on the brief for appellants.

*Rae E. Batt*, of Kinsley, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by defendants Curtis R. Johnson and Donna Jo Johnson, the owners and mortgagors of 320 acres of land in Edwards County, from a judgment of the district court of that county foreclosing a second mortgage held by the plaintiff, Home State Bank, and from the sale of the land pursuant to that judgment. This foreclosure proceeding is complicated by several factors: the first mortgage was not foreclosed; additional funds were advanced by the bank to the owners, under a separate agreement and notes, over four years after the mortgage was executed and recorded; oil and gas was being produced under leases on the land and the landowners' royalties were assigned to the mortgagees; and the owners filed a Chapter 7 bankruptcy petition during the pendency of this action.

The controlling issues may be stated as follows: (1) Did the trial court err in failing to fix the amount of the in rem judgment against the real estate and in not limiting that amount to $100,000? (2) Did the court err in determining who is entitled to the oil and gas royalties during the period (a) up until date of sale, and (b) during the period of redemption? and (3) Did the trial court err in ordering that taxes be paid out of the accumulated oil and gas royalties?

We will attempt to state the facts, which appear to be undisputed, in chronological order. On May 1, 1978, the Johnsons executed a first mortgage to The Travelers Insurance Company (Travelers). That mortgage was duly filed for record and recorded in the office of the Register of Deeds of Edwards County. That mortgage is not before us, was not foreclosed, and is not in dispute.

On May 5, 1978, the Johnsons executed to Travelers a document entitled Assignment of Bonuses, Rentals and Royalties under Oil and Gas Lease. That instrument recites the mortgage from the Johnsons to Travelers on the two described quarter sections of land in Edwards County; that each quarter section is subject to an oil and gas lease, one lease being held by Zenith Drilling Corporation, Inc., and the other being held by Texas

Energies, Inc. It then recites that for certain consideration, the Johnsons hereby assign to Travelers:

"[A]ll the bonuses, rents and royalties under said oil and gas leases, provided, however, that so long as all of the provisions of said note and mortgage are faithfully performed, owner may receive from lessee for owner's own use, such bonuses, rents and royalties. But it is [the Johnsons'] intention that [Travelers] may receive such bonuses, rents and royalties upon a default in the performance of the provisions of said note and mortgage . . . ."

The assignment was duly signed, acknowledged, and recorded.

On June 2, 1978, the Johnsons executed to the Home State Bank a real estate mortgage covering two described quarter sections of land in Edwards County. The mortgage was given to secure a loan of $100,000, evidenced by a note from the Johnsons to the Bank on the same date. The mortgage contains the following provision:

"This mortgage is given to secure payment of the sum of One hundred thousand and no/100 Dollars ($100,000.00) and interest thereon, according to the terms of promissory note/s this day executed and subsequently to be executed by the mortgagors to the mortgagee, and all other sums which may hereafter be owing to the mortgagee by the mortgagors or any of them, however evidenced; it being understood and agreed that the mortgagee may from time to time make loans and advances to the mortgagors or any of them and that all such loans and advances and the interest thereon will be secured by this mortgage; *provided that the aggregate principal amount of the loans and advances hereunder shall at no time exceed the amount hereinbefore stated.*" (Emphasis supplied.)

The mortgage states that it is subject to a first mortgage to The Travelers Insurance Company in the amount of $165,000, dated May 1, 1978. The Home State Bank's mortgage was duly recorded and the registration fee of $250 was paid, based on the indebtedness of $100,000, as required by K.S.A. 79-3102. (Kansas courts are prohibited by statute, K.S.A. 79-3107, from entering any judgment enforcing a real estate mortgage unless the registration fee fixed by K.S.A. 79-3102 has been paid.)

Johnson's mortgage to the Home State Bank also contained a provision for the assignment of oil and gas royalties, and pursuant thereto on May 31, 1979, the Johnsons executed an amended division order, directing the Permian Corporation to pay to the Bank the Johnsons' royalty interest in production on the oil and gas lease held by Zenith. Similarly, on June 5, 1980, Curtis R. Johnson executed a Transfer Order, directing Zenith Drilling Corporation to pay Johnson's one-eighth landowner's royalty from the Zenith lease to the Home State Bank.

On February 25, 1983, the Johnsons entered into a detailed

loan agreement with the Home State Bank, which recited that the Johnsons were desirous of obtaining a line of credit in the aggregate principal amount of $370,000 to renew existing notes, both interest and principal, and to provide funds for 1982 operating expenses. The Johnsons executed two notes. A new note, in the amount of $60,000, was to be paid off within one year, and the principal and interest on that note was to be reduced by payment of all oil and gas royalty income. A renewal note, in the amount of $310,000, was to be paid by all other income, including that from farm crops, grazing crops, government payments, sale of grain, and from royalty income after the $60,000 note was paid. This agreement is lengthy and need not be set forth in full here, except for the following provision, which is the only reference in the loan agreement to the June 2, 1978, real estate mortgage:

"h. It is further understood by the parties that the consideration for this loan agreement is the further extension of credit by Bank to Borrower, all as provided by Real Estate Mortgage previously filed for record, all security agreements, all financing statements filed of record, assignment of all oil and gas royalty, bonuses and rentals income."

The $310,000 renewal note stated: "Renew farm operating note," and further recited that it was secured by security agreement on various personal property, assignment of oil and gas income "dated 6-1-80 Zenith, 5-31-79 Permian, R E Mtg dated 6-2-78 on NE ¼ 12-25-17 Edws. Co., Ks." At the time this foreclosure action was filed, this note had been reduced to some $260,000 by various credits. The $60,000 note for "1982 farm operating expenses" recited that it was secured by "Assgn. of oil & gas income dated 6-1-80 Zenith and 5-31-79 Permian. Also RE Mtg dated 6-2-78 on NE ¼ 12-25-17 Edws. Co., Ks." At the time this suit was filed, this note had been reduced to some $13,000 by payments received for oil and gas royalties.

On March 23, 1984, this foreclosure action was filed. The Bank sought judgment against the Johnsons for the balance due on the renewal note, plus interest, and for foreclosure of its mortgage and sale of the real estate and the royalty interests and the personal property covered by the security agreements to pay that judgment. The petition states:

"That no suit of law has been had to secure the debt of said note or mortgage or any part thereof, and that defendants have been given credit for all proper offsets, and that there is now due and owing from the defendants to the plaintiff upon

said note and mortgage . . . in the sum of $268,584.98 with interest to February 28, 1984, and a per diem rate thereafter of $103.08, *the said sum of $100,000.00 to be applied upon the real property mortgage.* That defendants have failed to pay any payment of principal or interest from and after December 6, 1983, and that plaintiff has heretofore elected to declare the unpaid balance of the debt immediately due and payable and has so notified the defendants." (Emphasis supplied.)

The Bank also sought a judgment against the Johnsons for some $13,000 plus interest, being the balance due on the "new" or $60,000 note, and for the sale of the personal property covered by the security agreements as security therefor. There is no dispute before us as to the sale and disposition of the proceeds of the personal property.

The Johnsons answered and filed three counterclaims. Those were tried to a jury, which returned a verdict for the Bank, and no issue regarding the counterclaims has been appealed.

On August 22, 1984, the trial court ordered certain oil and gas royalties accruing since March 1, 1984, be paid by the Permian Corporation to the clerk of the district court, and that the clerk place such funds in an interest-bearing account.

On October 9, 1984, the Johnsons filed a joint petition for relief under Chapter 7 of the Bankruptcy Act with the Bankruptcy Court for the District of Kansas. That court promptly entered its order for a meeting of creditors and notice of the automatic stay arising pursuant to 11 U.S.C. § 362(a) (1982). A copy of that order and notice was received by the clerk of the Edwards District Court on October 19, 1984.

The Bankruptcy Court entered a turnover order on February 12, 1985, directing the clerk of the Edwards District Court to transmit the royalty funds held by the clerk to the clerk of the Bankruptcy Court, and also ordered Permian and Zenith to forthwith pay royalties on the two leases to the clerk of the Bankruptcy Court. The Court found that Travelers had a prior right to those funds, and it ordered its clerk to pay Travelers a $12,243.75 payment on its mortgage which had accrued and was due on January 1, 1985, and to pay semiannual payments thereafter as they became due and payable.

On April 11, 1985, the Bankruptcy Court discharged the Johnsons from all dischargeable debts. About the same time, the Bankruptcy Court entered an order granting the Bank relief from

the stay to proceed with the foreclosure in rem, without taking any personal judgment against the Johnsons.

On June 18, 1985, and apparently shortly after the Bankruptcy Court granted relief from the stay, the Bank filed in the Edwards County action a motion for summary judgment, together with an affidavit of the president of the Bank in support of the factual background for the motion. The affidavit stated that there was due on the notes $319,679.82 plus interest after June 17, 1985. The Johnsons filed a motion to quash the summary judgment motion. The Bank responded with a brief in support of its motion, and the Johnsons filed a memorandum supporting their position and opposing the motion. The matter came on before the court for oral argument on October 9, 1985. The court found that there were no disputed issues of material fact and granted the Bank's motion for summary judgment. The court found that the notes were secured by the June 2, 1978, mortgage, that the Bank's mortgage was a second mortgage and subject to the first mortgage of Travelers, and that the Bank was entitled to foreclose its mortgage and have the property sold, subject only to Travelers' first mortgage and to oil and gas leases of record, and to the Johnsons' right to redeem within six months. It ordered the sheriff to proceed with sale of the property upon those terms. The court took under advisement the issue of whether the Johnsons were entitled to the oil and gas royalties during the period to redemption.

On December 6, 1985, the sheriff filed his return on the order of sale. He reported that pursuant to the order of sale and following the required publication, he sold the two quarter sections of land to the Home State Bank, Lewis, Kansas,

"for the sum of $473,013.41, being the highest and best bid therefor, and the same being the bid of $134,083.00 of The Travelers Insurance Company, the additional sum of $337,172.45 being the additional bid of The Home State Bank, Lewis, Kansas, and the additional sum of $1,757.96 for taxes."

On December 12, 1985, the trial court entered an order finding that the Johnsons were entitled to the rents and profits from the two quarter sections of land during the period of redemption, and providing for a division of the proceeds from a wheat crop which the Johnsons planted prior to the sale and which would not be harvested prior to the expiration of the period of redemption. There is no issue here as to that portion of the order. The court also found that the Johnsons were not entitled to the oil and

gas royalties during the period of redemption, "as allowing them to retain said proceeds would constitute a waste of the property and depletion of the oil and gas contained thereunder," but the court ordered that the Johnsons should receive the interest earned on said oil and gas royalty proceeds, which were then being held by the clerk of the Bankruptcy Court.

On December 20, 1985, the Bankruptcy Court entered its order directing the disposition of the royalties accumulated by the clerk of that court. It found that the Trustee had no claim against the royalty interests which had accumulated since October 9, 1984, the date of the commencement of the Johnsons' bankruptcy proceeding. It found that the Home State Bank had previously been granted relief from the automatic stay and leave to foreclose its mortgage in the Edwards District Court, and that the subject of the Johnsons' royalty interest and the foreclosure of that interest was presently pending in the state court. It further ordered that the state court proceeding could continue, with such action having as one of its subjects the post-bankruptcy (after October 9, 1984) accumulation of royalty proceeds. The court made its findings a part of its order and decree, and it directed the clerk of the Bankruptcy Court to pay some $22,000 to the Trustee, that sum being the Johnsons' interest in the royalty proceeds as of October 9, 1984, and it directed its clerk to forward the balance of the royalty funds and accumulated interest to the clerk of the Edwards District Court.

On January 7, 1986, the trial court considered the Bank's motion to confirm the sale and the Johnsons' objections thereto. The Johnsons moved to set aside the sale, claiming that the Bank could only enforce the mortgage in rem for $100,000; that the Bank did not pay additional moneys to the sheriff in excess of that enforceable judgment; and that the sheriff improperly accepted the bid in excess of the Bank's valid judgment. The court also took up the Bank's motion to reconsider its order of December 12 allowing the Johnsons to receive interest on the royalty payments during the period of redemption. The court found that the Bank had paid to the clerk of the district court the sum of $134,083 (Travelers) and the further sum of $1,757.96 (taxes). The court found that the Bank was not required to pay the sum due it to the clerk. It found that there were additional taxes due in the amount of $2,626.04, which should be paid out of the

oil and gas royalty moneys then in the hands of the clerk. It confirmed the sale of the real estate to the Home State Bank for $473,013.41, directed the sheriff to issue to the Bank a certificate of purchase and, unless redemption was made within six months, directed the sheriff to execute and deliver to the legal holder of the certificate of purchase a deed. It ordered the clerk to pay to Travelers the sum of $134,083 for payment of its mortgage; to pay to the county treasurer delinquent real estate and gas personal property taxes of $1,757.96, and the additional sum of $2,626.04 from the funds received from the clerk of the Bankruptcy Court. By later order nunc pro tunc, the court corrected the $2,626.04 figure to $868.35.

Also on January 7, 1986, the court revised its order with reference to oil and gas royalties. It found that "by reason of K.S.A. 60-2412(a), [the Johnsons] have no right to receive any of the proceeds from their .125 royalty interest in oil and gas produced from property owned by them." It also noted that the bankruptcy clerk was mailing to the clerk of the district court the sum of $15,900.45 pursuant to the Bankruptcy Court's order of December 20, 1985, and that royalties would also be received by the clerk from Zenith and Permian. It directed the clerk to credit those funds to the Bank's bid for the real estate and then to forward those sums, less taxes paid, to the Bank, to be held in trust by it during the period of redemption, providing that not over $100,000 was to be retained by the Bank, and any funds exceeding that sum were to be held by the clerk.

On March 14, 1986, upon receipt of $134,083.00 from the clerk, Travelers assigned its mortgage to the Home State Bank, and Home State Bank remains the owner and holder of that mortgage. We were advised by counsel during oral argument that there has been no redemption, that the sheriff has executed and delivered his deed for the real estate to the Bank, and that the Bank has not conveyed the property.

The first issue is whether the trial court erred in failing to fix the amount of the in rem judgment against the real estate and in not limiting that amount to $100,000. We consider first whether the trial court erred in failing to fix the dollar amount of the in rem judgment. The Bankruptcy Court granted relief to the Home State Bank from the automatic stay, and authorized it to proceed in rem in this foreclosure action. The Bank was specifically

prohibited by the order of the Bankruptcy Court from taking any personal or excess judgment against the Johnsons. The Bankruptcy Court's order, however, does not preclude the state court from determining the amount of the judgment which is chargeable against the land.

This amount is important since it fixes the total amount which the Bank may bid without paying any excess in cash. The Bankruptcy Court has discharged the debtors from any unsecured obligation they had, prior to October 9, 1984, to the Bank. Therefore, the Johnsons may well be entitled to receive any amount bid over and above the amount of the Bank's judgment against the land. The dollar amount of the in rem judgment is also important in determining the ultimate cost of redemption to the mortgagors. For an example of the entry of a judgment in rem against certain real estate, for an amount certain, see *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974).

We hold that when a district court is entering an order of foreclosure in rem against mortgaged land, it is error for the court to fail to determine and state the amount of the judgment which is being entered against the land.

Next, we turn to the last part of the first issue, whether under the facts the in rem judgment against the mortgaged real estate should be limited to $100,000 plus, of course, accrued interest on that sum, together with taxes, insurance (if any), and costs. The mortgage was given to secure the sum of $100,000 plus future advances. By the specific terms of the mortgage, however, "the aggregate principal amount of the loans and advances" secured by the mortgage "shall at no time exceed" $100,000. The registration fee required by K.S.A. 79-3102 which was paid was based on an indebtedness of that sum.

The loan agreement of February 25, 1983, stated that the consideration for that agreement "is the further extension of credit by Bank to Borrower, *all as provided by Real Estate Mortgage* previously filed for record." (Emphasis supplied.) The agreement thus *incorporates* the terms of the mortgage; it does not *change* the future advances limitation included in it. At the same time, the Johnsons executed notes which listed various personal property, oil and gas income, *and* the real estate mort-

gage as security. Again, there was no change in the future advances limitation of the mortgage.

The petition which was filed at the commencement of this action recites that "the *said sum* of $100,000.00 [is] to be applied upon the real property mortgage." (Emphasis supplied.) That sum is not mentioned elsewhere in the body of the petition, only in the copy of the mortgage which is appended. That statement in the petition indicates that the Bank acknowledged and recognized the extent of the lien of its mortgage. Bankruptcy, however, was yet to come.

The Bank relies upon the future advances clause of the mortgage to authorize the enforcement of the mortgage as security for the total amount still due on both notes. We have recognized the validity of future advances clauses in a number of cases. See *First Nat'l Bank & Trust co. v. Lygrisse*, 231 Kan. 595, 647 P.2d 1268 (1982); *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178; *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P.2d 1091 (1958), 80 A.L.R.2d 166.

Such clauses, as we said in *Mounkes*, 214 Kan. at 181, should be "carefully scrutinized and strictly construed." The key, and the controlling issue, is the intention of the parties. See *Mounkes*, 214 Kan. at 181; *Lygrisse*, 231 Kan. at 600-01. As with any written contract, the intention of the parties thereto is to be determined from the instrument when its terms are plain and unambiguous. Notes and mortgages are contracts between the parties, and the rules of construction applicable to contracts apply to them. *Carpenter v. Riley*, 234 Kan. 758, Syl. ¶ 3, 675 P.2d 900 (1984). As we said in *Lygrisse*, 231 Kan. 595, Syl. ¶ 5, "The best and most persuasive evidence of the intention of the parties who enter into a written agreement is that which is expressed by the terms of that agreement."

The terms of the mortgage are crystal clear; the mortgage was not intended to secure a principal amount, whether the original loan or later advances, in excess of $100,000. The written loan agreement and the two notes do not vary, but confirm, the terms of the mortgage. The construction of a written instrument is a question of law and the instrument may be construed and its legal effect determined by this court on appeal. See *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, Syl. ¶ 1, 673 P.2d 1112 (1983).

The only portion of the Johnsons' indebtedness to the Bank

which was secured by the 1978 real estate mortgage was the principal sum of $100,000 plus accrued interest on that sum, plus taxes, insurance (if any), and costs. The trial court erred in not determining that amount and entering judgment therefor against the mortgaged land.

The second major issue is whether the trial court erred in determining entitlement to the oil and gas royalty income. The Bankruptcy Court ordered that royalty income accruing prior to the date of filing for bankruptcy, October 9, 1984, be paid to the Trustee in Bankruptcy, so the disposition of that portion of the royalty income is not before us. The post-filing royalties accumulated by the bankruptcy clerk were paid to the clerk of the district court and royalties have been paid directly to the clerk since the Bankruptcy Court entered its order on December 20, 1985.

The trial court ultimately determined that "by reason of K.S.A. 60-2412(a)," the Johnsons had no right to receive any royalties. K.S.A. 60-2412 has no subsection (a) and is inapplicable here. The Bank's motion which the trial court sustained refers to K.S.A. 60-2414(a), and that appears to be the statute upon which the court relied. K.S.A. 60-2414(a) provides in part that the "right of redemption shall not apply to oil and gas leaseholds." As used in the context of Section 2414, an oil and gas leasehold means the estate of the oil and gas lessee. The Johnsons, as owners of the real estate, and as lessors, granted two separate oil and gas leases on separate quarter sections. The oil and gas leasehold estates are not being foreclosed upon and sold in this proceeding. Neither is there any attempt by the Bank to void the oil and gas leases; the petition specifically excepts "all valid oil and gas leases, easements and oil and gas production." The trial court erred in its application of K.S.A. 60-2414(a) and in barring the Johnsons from receiving royalties during the period of redemption.

The Johnsons have a one-eighth royalty interest, reserved to them as the landowners and lessors. They have, by the terms of the mortgage to Travelers, as interpreted by the Bankruptcy Court, pledged their right and interest in the proceeds attributable to that royalty interest to Travelers. Although they later assigned their royalties to the Home State, the first and prior assignment was to Travelers. They defaulted on Travelers'

mortgage on January 1, 1985; presumably all payments falling due on Travelers' mortgage since January 1, 1985, have been paid out of the royalty income. The Home State is now the owner and holder of Travelers' mortgage but we will continue to refer to it as Travelers' mortgage. It has not been foreclosed. When plaintiff's second mortgage was foreclosed, the sheriff reported that he had sold the land to the Home State "for the sum of $473,013.41, being the highest and best bid, and the same being the bid of $134,083.00 of The Travelers Insurance Company, the additional sum of $337,172.45 being the additional bid of the Home State Bank, Lewis, Kansas, and the additional sum of $1,757.96 for taxes."

Travelers did not foreclose its mortgage. The Home State Bank paid the $134,083.00 to the clerk, under order of the court, the clerk sent the money to Travelers, and Travelers assigned its mortgage to the Home State Bank.

The trial court ordered the accrued and accruing royalties to be credited by the clerk to the Bank's bid, and then to forward those sums, less taxes paid, to the Bank, to be held by it in trust during the period of redemption. We disagree. The royalty payments should be applied against Travelers' mortgage first. If and when it is paid, then royalty payments may be applied to the Home State mortgage, up until the date of sale.

Royalties accrued during the period of redemption, however, present a different problem. The right to possession, and to the rents and profits of land being foreclosed, is, under K.S.A. 60-2414, in the defendant owner of the property, and, except for waste, this right is absolute. *First Federal Savings & Loan Ass'n. v. Moulds*, 202 Kan. 557, 561, 451 P.2d 215 (1969). As we said in *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. 40, 43, 397 P.2d 360 (1964):

"One of the most important purposes of the redemption statutes is to provide the mortgagor with rents and profits from the property during the redemption period *to enable him to redeem.* Such purpose is specifically indicated in G.S. 1949, 60-3461, which provides the holder of the certificate of purchase may appoint a receiver to take possession in order to prevent waste; '*but the income* during said time, except what is necessary to keep up repairs and prevent waste, *shall go to the owner* or defendant in execution, or the owner of the legal title.' " (Emphasis supplied).

Our present statute, K.S.A. 60-2414(p), contains a similar provision:

"The holder of the certificate of purchase shall be entitled to prevent any waste or destruction of the premises purchased. For that purpose the court, on proper showing, may issue an injunction or, when required to protect the premises against waste, appoint a receiver who shall hold the premises until the purchaser is entitled to a deed. The receiver may rent, control and manage the premises *but the income* during that time, except the amount that is necessary to keep up repairs, prevent waste and pay real estate taxes and insurance premiums, *shall go to the person who otherwise would be entitled to possession during the period of redemption.*" (Emphasis supplied.)

The trial court recognized the Johnsons' right to possession of the land during the period of redemption, and to the rents and profits from the farming operations during that time; the court also held, however, that they were not entitled to the royalties because that would constitute "waste." In *Moulds*, 202 Kan. at 562, we distinguished waste from normal use. We said: "The term implies neglect or misconduct resulting in material damage to or loss of the property." We also quoted from Black's Law Dictionary 1760 (4th ed. rev. 1968), which defines "waste" in part as "An abuse or destructive use of property by one in rightful possession. . . . An unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury."

While the removal of oil and gas from land pursuant to a lease results in normal depletion of the hydrocarbons thereunder, the grazing of cattle or the raising of crops on land also tends to deplete the natural productivity of the soil and the minerals therein. The ordinary production of oil and gas does not equate with the instances of waste cited in *Moulds*—the cutting of timber, or the abandonment of a building which had its windows and doors removed. We conclude that the continued production of oil and gas from the premises does not constitute waste.

We hold that the landowner's royalties, arising from the production of oil and gas under a lease upon mortgaged premises, constitute a part of the rents and profits from the land to which the landowner-mortgagor is ordinarily entitled during the period of redemption. Accordingly, when the land here involved is sold under an order of foreclosure of the Bank's second mortgage, the Johnsons would be entitled to have possession of the land and to receive the rents and profits therefrom, including the royalties attributable to the redemption period, during the period of redemption. However, the Johnsons have assigned the royalties

to Travelers, default was made on Travelers' first mortgage, that mortgage has not been foreclosed, and so far as we are advised, the mortgage debt has not been satisfied. The royalties received during the period of redemption must therefore be applied to Travelers' mortgage. If it is fully paid before the end of the period of redemption following sale under Home State's judgment, then the Johnsons shall receive the royalties during the rest of the redemption period.

Finally, the Johnsons contend that the taxes should not be paid out of the royalty income. Our resolution of the royalty problem determines this issue. We agree that during the period of redemption, absent Travelers' interest as set forth above, the Johnsons would be entitled to the landowners' royalties without deduction therefrom. However, Travelers or its assignee is entitled to have the taxes paid from the royalties or to pay the taxes itself and to add such sums to the principal due on that mortgage. Therefore, taxes were properly paid from royalty funds.

The order and judgment of the Edwards District Court foreclosing the mortgage in rem, without finding and stating the amount due, the order and judgment denying to the landowners the royalties during the period of redemption, and the order of confirmation of sale are reversed and the case is remanded to the district court with directions to set aside the sheriff's sale and deed, and for further proceedings in conformity with this opinion.

We have examined other issues raised but they need not be decided in light of our determination of this appeal.