**In re Leslie Ray WOLFE, Debtor.**

**CANEY VALLEY NATIONAL BANK, Plaintiff,**

v.

**Gary ALEXANDER, Jennifer Alexander, and Louise A. Stralka, Defendants.**

**Louise A. STRALKA, Third–Party Plaintiff,**

v.

**Edward J. NAZAR, Trustee for the Bankruptcy Estate of Leslie Ray Wolfe, Third–Party Defendant.**

**Bankruptcy No. 94–22347[1].**
**Adv. No. 94–6189[2].**

United States Bankruptcy Court, D. Kansas.

March 15, 1995.

**1.** This case was originally assigned to the Wichita division of this Court under Case No. 85–11556. Judge Pearson's sua sponte order of December 14, 1994, transferred it to the Kansas City division where it was renumbered as Case No. 94–22347.

**2.** This adversary complaint was originally assigned to the Wichita division of this Court under Adversary No. 91–5241. Judge Pearson's sua sponte order of December 14, 1994, transferred it to the Kansas City division where it was renumbered as Adversary No. 94–6189.

John M. Wall, Sedan, KS, for defendant and third-party plaintiff, Louise A. Stralka.

Mary Patricia Hesse of Redmond, Redmond & Nazar, Wichita, KS, for Edward J. Nazar, the Chapter 7 Trustee.

### MEMORANDUM OPINION [3]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The question before the Court is whether the purchaser of a landowner's oil and gas royalty at a trustee's sale has the right to rescind the sale and recoup her purchase price, adjusted for royalties she received after the purchase.[4] The parties have filed briefs with agreed facts. Principles from the netherworld of Kansas oil and gas law will clarify the nature of a Kansas landowner's oil and gas royalty interest.

Kansas recognizes an ownership-in-place concept of oil and gas. Under this theory, ownership extends to oil and gas in the ground as part of the land, similar to the ownership of hard minerals. The owner of the surface of the land also owns the minerals in place below the ground, a corporeal estate in realty in the oil and gas. He or she can create a separate corporeal estate in realty in the oil and gas apart from the rest of the land. Such a severed mineral interest is, in general, subject to the same rules as affect other corporeal interests in real property. Richard W. Hemingway, *The Law of Oil and Gas* 27 (3rd ed. 1991).

3. Defendant and third-party plaintiff Louise A. Stralka appears by her attorney, John M. Wall, Sedan, Kansas. The Chapter 7 trustee, Edward J. Nazar, appears by his attorney, Mary Patricia Hesse of Redmond, Redmond & Nazar, Wichita, Kansas. There are no other appearances.

4. The pretrial order stipulates that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper;

that all necessary and indispensable parties are joined; and that the Court may try this adversary proceeding to final judgment. The Court finds independently of the stipulation that this adversary proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan. Rule 705).

In contrast, other states use a non-ownership theory of oil and gas. The landowner holds only a right to search for and reduce the oil and gas to possession. Such a right of search is "owned apart from the land, [and] it is usually classified as a profit à prendre, an incorporeal interest in the land, although it has also been classified as a license, a servitude, or a chattel real." *Id.*

When the owner of a Kansas mineral estate grants an oil and gas lease, he or she commonly reserves a fractional interest known as a "landowner's royalty." Such a royalty is customarily a one-eighth share of oil and gas produced from the lease, but it does not include a perpetual interest in the minerals in place. It is simply a "share" of production "paid." *Stratmann v. Stratmann*, 6 Kan.App.2d 403, 628 P.2d 1080 (1981); *Davis v. Hurst*, 150 Kan. 130, 90 P.2d 1100 (1939). This landowner's royalty is classified as personal property under Kansas law. *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P.2d 463 (1935); *Lathrop v. Eyestone*, 170 Kan. 419, 227 P.2d 136 (1951); *Cosgrove v. Young*, 230 Kan. 705, 642 P.2d 75 (1981).

The lessee's interest in a Kansas oil and gas lease, called the "working interest," is a license to go upon the land in search of oil and gas. Customarily, it consists of seven-eighths of the oil or gas produced and severed from the ground. Like the landowner's royalty, the working interest is classified as personal property, an incorporeal hereditament, a profit à prendre. *Burden*, 141 Kan. at 150; *Davis*, 150 Kan. at 131; *Utica Nat'l Bank & Trust Co. v. Marney*, 233 Kan. 432, 661 P.2d 1246 (1983). However, for some purposes it may be treated as real estate. *Ingram v. Ingram*, 214 Kan. 415, 420, 521 P.2d 254 (1974) (holding that an oil and gas lease is a hybrid property interest which, for some purposes, is considered to be personal property and for other purposes is treated as real property).

The landowner's royalty interest is assignable by the owner of the mineral interest and mesne assignors. *Hardcastle v. McCluskey*, 139 Kan. 757, 33 P.2d 127 (1934). The facts surrounding the creation of the lease and the landowner's royalty interest in this case and the transfer of the latter interest will be developed first, followed by those facts relating to the transfer of the working interest.

### Royalty Facts

Leslie Ray Wolfe and his wife, Edna M. Wolfe, owned real property in Chautauqua County, Kansas, subject to a recorded real estate mortgage[5] held by the Federal Land Bank of Wichita (now Farm Credit Bank). Since neither party contends otherwise, the Court assumes that the mortgage lien covered both the surface and the minerals.

The Wolfes divorced on May 2, 1984, and as part of the division of property, the court awarded the real property in question to Mr. Wolfe. Apparently, it also awarded Mr. Wolfe a number of other properties and leases as well.[6]

On May 29, 1984, Leslie Ray Wolfe executed an oil and gas lease running to his son, Jimmy Ray Wolfe, as lessee.[7] The lease was for a primary term of two (2) years and for "as long thereafter as oil or gas, or either of

---

5. On October 28, 1977, in consideration for a $76,000.00 loan, Leslie Ray Wolfe and Edna M. Wolfe signed a promissory note in favor of the Federal Land Bank of Wichita and granted the Land Bank a mortgage in the following real estate, to wit:

    Lots 1, 2, 3 and 4 in Section 4, Township 35 South, Range 12 East of the 6th P.M.

    S½ SW¼ Section 33, Township 34 South, Range 12 East of the 6th P.M.

    The mortgage was recorded in the Office of the Register of Deeds of Chautauqua County, Kansas, on November 10, 1977, in Book 72 of Mortgages at Page 11. (Promissory Note and Mortgage, Exhibit No. 2 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

6. Nunc Pro Tunc Amended Decree of Divorce, Exhibit A attached to Complaint to Determine Dischargeability and for Declaratory Relief filed December 20, 1985, by Edna May Wolfe, at 3–7. (Although this dischargeability complaint was assigned adversary no. 85–0773, it is document no. 22 in the main case court file.)

7. The lease (the "Wolfe Lease") was recorded with the Chautauqua County Register of Deeds on May 29, 1984, at Book 57, Page 513. (Oil and Gas Lease, Exhibit No. 3 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

them, is produced from said land by the lessee." [8] Jimmy Ray Wolfe agreed in the lease "[t]o deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises." [9] No one contests that this language created a landowner's royalty or suggests that the mortgagee, Federal Land Bank, agreed to subordinate its lien to the lease.

Leslie Ray Wolfe filed for relief under Chapter 7 of the Bankruptcy Code on August 28, 1985, while holding interests in a large number of oil and gas leases. Edward J. Nazar was appointed interim trustee on September 3, 1985.

On March 4, 1986, Nazar filed notice of his intention to sell a number of leases, including the "Wolfe Lease" at issue in this case. The notice stated that the sale was under § 363(f) of the Bankruptcy Code, free and clear of liens, and included the following terms:

> All of the Debtor's interest in certain oil and gas leases located in Chautauqua County, Kansas, and Montgomery County, Kansas, more particularly described as follows:
>
> . . . .
>
> *Wolfe Lease*
>
> The South Half of the Southwest Quarter (S/2 of SW/4) of Section Thirty–Three (33), Township Thirty–Four (34) South, Range Twelve (12) East of the 6th P.M. and Lots 1 and 2, Section 4, Township 35 South, Range 12 East of 6th P.M., Chautauqua County, Kansas.
>
> . . . .

15. The property as hereinabove described will be sold to the highest bidder, and said property will be sold in its present condition with no expressed or implied

warranties, and the purchaser is to accept said property in its present condition.

16. The sale will be free and clear of all liens and encumbrances of record, and in the event of any mortgage or security interest in and to said property to be sold, the mortgage or security interest shall be transferred to the proceeds of sale. . . . [10]

The stipulated facts do not address why the notice of sale described the sale property as the *"Wolfe Lease"* without indicating that it was a landlord's royalty that was being offered for sale. Nor do the agreed facts mention that as successor to the debtor's ownership interests in realty, Nazar had the power to sell the debtor's ownership rights in the minerals below the ground described. (Perhaps he felt the mortgage on that interest was an impediment to such a sale.) In any event, according to the stipulations, the only interest Nazar sold was the landowner's royalty interest.

Louise A. Stralka successfully bid $8,000.00 for the royalty interest on March 19, 1986.[11] The trustee's deed described the interest as follows:

> [A]ll the Debtor's right, title and interest in a .1250 royalty interest in and to real property described as the South Half of the Southwest Quarter (S/2 of SW/4) of Section 33, Township 34 South, Range 12 East, and Lots 1 and 2, of Section 4, Township 35 South, Range 12 East, and containing _____ [sic] acres, in Chautauqua County, Kansas; free and clear of all liens and encumbrances of record, and thereon to have and to hold the same with all the appurtenances and hereditaments thereto belonging forever.[12]

According to her brief, Stralka received the following royalty payments after her purchase:

---

**8.** Oil and Gas Lease, Exhibit No. 3 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.

**9.** *Id.*

**10.** Notice of Intended Sale, Exhibit No. 11 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 1, 3, 9–10.

**11.** The Trustee's Royalty Deed reflecting the sale was filed with the Chautauqua County Register of Deeds on May 16, 1986, on page 732 of Book 86 of Deeds. (Trustee's Royalty Deed, Exhibit No. 12 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

**12.** *Id.*

| 1986 | — | $1,730.00 |
|---|---|---|
| 1987 | — | 294.68 |
| 1988 | — | None |
| 1989 | — | 197.00 |
| 1990 | — | 534.00 |
| Total | | $2,755.68 |

The last payment was made on March 19, 1990.[13]

Having obtained relief from the automatic stay on January 23, 1986, the Federal Land Bank of Wichita filed a petition to foreclose its mortgage on April 9, 1987, in a case captioned: *The Federal Land Bank of Wichita v. L. Ray Wolfe, et al.*, Case No. 87–C–34 in the District Court of Chautauqua County, Kansas. The named defendants were: L. Ray Wolfe; Leslie Ray Wolfe; Ray Wolfe; Edna Wolfe; Edna M. Wolfe; Edna May Wolfe; Edna Wolfe Peel; Edna May Wolfe Peel; Edna May Beasley; Ray Wolfe Farms; Ray Wolfe Oil Company; Ray Wolfe Dozer Service; Ray Wolfe Seeding and Fencing; The Sedan State Bank, through its Receiver, the Federal Deposit Insurance Corporation, the Federal Deposit Insurance Corporation; and Edward J. Nazar, Trustee in Bankruptcy.[14] Notably absent from those joined as defendants were the working interest holder, Jimmy Ray Wolfe, and the plaintiff here, Louise K. Stralka, and their assigns.

On September 8, 1987, the state court awarded the Federal Land Bank judgment against Leslie Ray Wolfe (in rem) and Edna M. Beasley (formerly Edna M. Wolfe) for $86,072.69. The state court journal entry of that date contained the following language barring the trustee from any claim to the described property outside his redemption rights:

The Court further finds that the terms and conditions of the mortgage has [sic] been broken and as a result thereof, Plaintiff [Federal Land Bank] is now entitled to have its mortgage foreclosed and the real estate set forth above sold in satisfaction of the said note and mortgage executed in conjunction therewith; and that from and after the date of the sale of the premises the Defendants, L. Ray Wolfe; ... Edna M. Beasley; ... The Sedan State Bank, through its receiver, Federal Deposit Insurance Corporation; Federal Deposit Insurance Corporation and Edward J. Nazar, Trustee in Bankruptcy, should be forever barred and estopped from claiming any right, title, lien, estate or interest in and to the above described property and every part thereof as against the purchaser at such sale except for the right of redemption granted to Edna M. Beasley and Edward J. Nazar, Trustee in Bankruptcy of six (6) months as provided by law.[15]

The state court journal entry also ordered the Sheriff to sell the subject property and to apply the sale proceeds to the judgment. At the Sheriff's Sale on October 30, 1987, the Federal Land Bank successfully bid $63,000 for the parcels of real property, "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining." [16]

Finally, on February 17, 1989, the Farm Credit Bank of Wichita, Kansas, sold the real estate to the defendants in this adversary, Gary M. Alexander and Jennifer K. Alexander.[17]

*Working Interest Facts*

On October 11, 1986, Jimmy Ray Wolfe assigned the undivided seven-eighths working interest in the Wolfe Lease to Continen-

13. Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 4.

14. Petition for Foreclosure of Mortgage Pursuant to K.S.A. Chapter 60, Exhibit No. 1 to Trustee's Memorandum Brief filed March 17, 1992.

15. Journal Entry, Exhibit No. 2 to Trustee's Memorandum Brief filed March 17, 1992, at 3.

16. Sheriff's Deed, Exhibit No. 9 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 2.

17. The Corporation Special Warranty Deed reflecting the sale was filed with the Chautauqua County Register of Deeds on March 2, 1989, at Page 417, Book 89 of Deeds. It was "SUBJECT TO: Easements, rights of ways, restrictions, reservations, mineral interests or mineral leases, and any building or zoning restrictions or regulations, and any discrepancies an accurate survey would reveal." (Corporation Special Warranty Deed, Exhibit No. 10 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

tal Oil & Gas and Larry Soles.[18] In turn, Continental Oil & Gas and Larry Soles assigned the undivided seven-eighths working interest to E. Fern Soles on January 1, 1987.[19] On June 11, 1987, Continental Oil & Gas, Larry Soles, Owner, and Larry Soles and E. Fern Soles, his wife, assigned all of their right, title and interest in the Wolfe Lease working interest to James K. Salsman.[20]

James K. Salsman and Nancy Salsman, his wife, granted a security interest in the Wolfe Lease and mortgaged other property to the Caney Valley National Bank of Caney, Kansas, on September 21, 1987.[21] Apparently the Salsmans defaulted because Caney Valley National Bank filed suit to foreclose its security interest in the working interest on August 25, 1989, in a case captioned: *Caney Valley National Bank v. James K. Salsman, et al.*, Case No. 89 C 64, in the District Court of Chautauqua County, Kansas.[22]

The state court awarded a $61,726.03 money judgment against James K. Salsman and Nancy Salsman in favor of Caney Valley National Bank and entered an Order of Sale on December 22, 1989, directing the Sheriff to sell the property of the Salsmans.[23] Caney Valley National Bank successfully bid $7,500.00 for the described property.[24]

Having foreclosed on the working interest, Caney Valley then filed suit against the Alexanders and Louise A. Stralka in Chautauqua County, Kansas,[25] demanding that the lease be declared valid and that the defendants be enjoined from interfering with Caney Valley's right to operate the lease.

Louise A. Stralka answered Caney Valley's petition and filed a third-party petition against Edward J. Nazar in his capacity as trustee of Leslie Ray Wolfe's bankruptcy estate.[26] Stralka's third-party petition asked the court to cancel the trustee's sale of the landowner's royalty interest and to return

18. This assignment was recorded by the Chautauqua County Register of Deeds on October 14, 1986, at Page 366, Book 72 of Assignments. (Assignment of Oil and Gas Lease, Exhibit No. 4 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

19. This assignment was recorded by the Chautauqua County Register of Deeds on January 30, 1987, at Page 687, Book 72 of Assignments. (Assignment of Oil and Gas Lease, Exhibit No. 5 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

20. This assignment was recorded by the Chautauqua County Register of Deeds on June 12, 1987, at page 267, Book 74 of Assignments. (Assignment of Oil and Gas Lease, Exhibit No. 6 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

21. The Mortgage and Security Agreement was filed with the Chautauqua County Register of Deeds on September 23, 1987, at Page 589, Book 85 of Mortgages. Apparently Uniform Commercial Code financing statements were filed with the Kansas Secretary of State and the Chautauqua County Register of Deeds; however, the copies attached as exhibits to the Stralka brief are not file-marked. (Promissory Notes, Mortgage and Security Agreement, Exhibit No. 7 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

22. Petition, Exhibit No. 3 to Trustee's Memorandum Brief filed March 17, 1992.

23. This property included, among other things, the following:

> 100% interest in the oil and gas lease rights covering the following described land in Chautauqua County, Kansas, to wit: the S/2 of the SW/4 of Section 33, Township 34 South, Range 12 East, together with all oil, gas and casinghead gas produced from said property together with all of the mortgagor's interest in all oil wells, gas wells, casing, tubing, rods, towers, derricks, tanks, pipelines, buildings, machinery and all other property located thereon or used in connection therewith.

(Sheriff's Assignment and Bill of Sale, Exhibit No. 8 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 2.)

24. The Sheriff's Assignment and Bill of Sale reflecting the Bank's purchase was recorded by the Chautauqua County Register of Deeds at page 139 of Book 78 of Assignments. (Sheriff's Assignment and Bill of Sale, Exhibit No. 8 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992.)

25. Petition filed August 29, 1989, in *Caney Valley National Bank v. Alexander, et al.*, Case No. 90 C 18 in the District Court of Chautauqua County, Kansas, Exhibit No. 5 to Trustee's Memorandum Brief filed March 17, 1992.

26. Third Party Petition filed August 26, 1991, in *Caney Valley National Bank v. Alexander, et al.*, Case No. 90 C 18 in the District Court of Chautauqua County, Kansas, Exhibit G to Application for Removal filed September 16, 1991.

her purchase money, after adjustment for royalty payments received by Stralka.

Nazar responded by removing the complete Caney Valley action to this Court.[27] While Caney Valley had joined Stralka as a defendant in the action, Caney Valley made no claim to the royalty she held. In turn, Stralka made no claim to the seven-eighths working interest in which Caney Valley claimed a security interest. Since the Alexanders did not crossclaim against Stralka, the suit by Stralka against the trustee remained independent of all the other claims in the Caney Valley suit. Consequently, except for Stralka's claim for relief against the trustee, Judge Pearson remanded the Caney Valley action to the District Court of Chautauqua County, Kansas.[28]

While this removed controversy between Stralka and Nazar has been under advisement, the remanded state court action between Caney Valley National Bank and the Alexanders was settled and dismissed. Although he has not furnished this Court with the terms of the settlement, Nazar has filed a motion to dismiss Stralka's action against him on the grounds that dismissal of the underlying suit moots Stralka's claim against him. However, since Stralka's suit stands independently of the Caney Valley litigation, the trustee's mootness argument fails.

### Discussion

In her state court third-party petition and in her brief here, Stralka claims that Nazar induced her to purchase the royalty by selling it free and clear of liens. She blames him for her loss because allegedly he knowingly sold her an interest that was in fact encumbered by a mortgage. According to Stralka, if the "free and clear" language had not misled her into believing that the royalty interest was unencumbered, she would not have made the purchase. She claims that Nazar made a mistake and that equity should

correct it by decreeing reversal of the sale and return of her purchase price.[29]

Stralka seeks restitution of $5,244.32, plus interest and reasonable attorney's fees. From the time she purchased the royalty interest in 1986 to its termination in 1990, Stralka collected $2,755.68 on her one-eighth royalty interest.[30] The $5,244.32 amount being sought, exclusive of interest and fees, represents the return of her $8,000.00 purchase price, less $2,755.68, the royalty payments she collected.

A number of Kansas oil and gas cases hold that a landowner's royalty is treated as rents and profits which the landowner or his assignee are entitled to receive only until the end of the redemption period. *Hardcastle v. McCluskey*, 139 Kan. 757, 33 P.2d 127 (1934) (foreclosing a mortgage held to cut off a landowner's royalty that was created before the mortgage was granted (and not mentioned in the mortgage) but assigned by the landowner to a third party after the mortgage was granted); *Fairchilds v. Ninnescah Oil and Gas Co.*, 151 Kan. 551, 99 P.2d 839 (1940) (ruling that a landlord's royalty interest was extinguished by foreclosure of a prior recorded mortgage); *Rathbun v. Williams*, 154 Kan. 601, 121 P.2d 243 (1942) (holding that the sale under the foreclosure of a tax lien on a separately owned mineral interest resulted in the extinguishment of the mineral title and a one-eighth oil royalty interest that depended on the mineral interest that was transferred to the buyer); *Home State Bank v. Johnson*, 240 Kan. 417, 729 P.2d 1225 (1986) (allowing a landowner's royalty holder to receive royalty payments during the period of redemption only).

While explaining how she came to lose her royalty interest, Stralka's brief acknowledges the doctrine of the cited cases with the following language:

---

27. Trustee's Application for Removal filed September 16, 1991; Amended Notice of Removal filed November 19, 1991.

28. Order Partially Remanding Cause filed January 22, 1992.

29. She cites *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964), for the proposition that the statute of limitations on a cause of action to cancel an instrument for mistake does not begin to run until the mistake is discovered.

30. The last payment was by check dated March 19, 1990. *Supra* note 13.

The action of The Federal Land Bank of Wichita against L. Ray Wolfe named as a defendant, Edward J. Nazar, Trustee in Bankruptcy, and was filed April 9, 1987. Edward J. Nazar, as Trustee, entered his appearance on April 20, 1987. Judgment foreclosing the mortgage was rendered on September 8, 1987. By said judgment Edna M. Beasley (Wolfe) and Edward J. Nazar were each granted a right of redemption for a period of six (6) months. On October 3, 1987, an Order of Sale was issued, the sale was held October 30, 1987, and the property was sold to The Federal Land Bank of Wichita. The sale was confirmed on December 11, 1987.

During the redemption period, which ended May 1, 1988, the landowner, in this case the Trustee in Bankruptcy, was entitled to the royalty, but when the redemption period expired, the purchaser would be entitled to the royalty. *Home State Bank v. Johnson*, 240 Kan. 417, 429; 729 P.2d 1225. The Federal Land Bank of Wichita would have been entitled to the royalty from May 1, 1988, until the sale on February 17, 1989.

L. Ray Wolfe owned the surface, as well as the minerals, subject to the mortgage. Edward J. Nazar, as Trustee in Bankruptcy, became entitled to the equities of L. Ray Wolfe on September 3, 1985. As said Trustee, he was entitled to receive the royalties until the mortgage to The Federal Land Bank foreclosed its prior lien and then for the redemption period. Royalties then became the property of the purchaser at the foreclosure sale.[31]

After granting a mortgage that covered the surface and the minerals in place, the landowner, Leslie Ray Wolfe, leased the oil and gas to his son, Jimmy Ray Wolfe, reserving the customary landowner's one-eighth royalty share of any oil produced from the land. The Federal Land Bank did not subordinate its prior mortgage to the lease.

Then, Leslie Ray Wolfe filed a bankruptcy petition which transferred all of his interests in property to the bankruptcy estate. His property interests included the fee interest in the land consisting of the surface and the minerals, subject to the mortgagee's prior recorded lien thereon, and his landowner's royalty. However, the royalty interest was not subject to the prior mortgage because it was personal property that came into existence after Wolfe granted the mortgage.

The trustee sold the landowner's royalty interest as the Bankruptcy Code empowered him to do. According to the usual practice, and perhaps because other properties were being sold, the trustee noticed the sale as being free and clear of liens. However, in this instance since the royalty interest was unencumbered personal property, this form of sale was unnecessary.

Next, the Federal Land Bank filed to foreclose its real estate mortgage on the surface and minerals, joining as defendants the bankruptcy trustee, Nazar, and the landowner, Leslie Ray Wolfe. Nazar's joinder resulted in foreclosure of the mortgage against the bankruptcy estate's ownership of the surface and minerals of the land. Having obtaining title and there being no redemption by May 1, 1988, the Land Bank conveyed the land and minerals to the Alexanders. Since the Land Bank did not join the royalty assignee, Stralka, as a defendant, its mortgage foreclosure did not foreclose on her royalty interest. This is no surprise, of course, since the Land Bank's foreclosure could not have freed Stralka's royalty interest from a lien the Bank did not have.[32]

However, the Bank's foreclosure had the indirect effect of extinguishing the royalty when redemption was not exercised. In reality, it was the nature of the royalty interest that caused its cancellation when redemption was not accomplished. The Kansas cases cited above treat the royalty like rents and profits. During the redemption period, the rents and profits go to the owner

31. Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 6–7.

32. The same reasoning would apply to working interest owner, Jimmy Ray Wolfe, who also was not joined as a party in the mortgage foreclosure. However, whether the working interest would be extinguished by the conveyance of the fee, as the royalty interest was, is not for decision here.

of the fee or her assignee. If no one redeems, the foreclosure order vests ownership of the land and minerals in place in the purchaser at the sale. While the owner of the fee who also holds the royalty interest can assign the royalty to a third party, and that party can assign the royalty to others, all such assignees hold their royalty interests subject to the possibility that the owner of the minerals in place will be divested of those rights by a foreclosure which extinguishes the royalty interest.

■ Nazar sold only the royalty interest belonging to Leslie Ray Wolfe. Nazar's notice of sale makes it clear that the sale was "as is" with the language:

> The property as hereinabove described will be sold to the highest bidder, and said property will be sold in its present condition with no expressed or implied warranties, and the purchaser is to accept said property in its present condition.[33]

Stralka says equity should come to her aid because Nazar sold the royalty free and clear of liens, but this is false because while the Land Bank's foreclosure action took her royalty, it did so, not because there was a lien on the royalty, but because the foreclosure decree transferred the minerals in place to a different owner. The law took her interest when she failed to redeem in the foreclosure.

Stralka knew or should have known before she bought the royalty interest that before Leslie Ray Wolfe gave the lease that reserved the royalty, he had given a mortgage on the land. She, as easily as Nazar, could have discovered the Kansas decisions that extinguish a royalty upon foreclosure on the fee. The cases do so even where the mortgage was granted after the lease and royalty were created. *Hardcastle v. McCluskey,* 139 Kan. 757, 33 P.2d 127 (1934); *Home State Bank v. Johnson,* 240 Kan. 417, 729 P.2d 1225 (1986).

While Stralka claims that Nazar made a mistake that entitles her to relief, if he made a mistake, it was one of law; a mistake she made as well by not finding that Kansas law

would extinguish her royalty interest by foreclosure, even when there was no lien on that interest. There is no justification for equitable interference with the sale. Plaintiff's petition is dismissed.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

**33.** Notice of Intended Sale, Exhibit No. 11 to Brief of Louise A. Stralka, Third Party Plaintiff, filed March 12, 1992, at 9–10.