No. 121,690

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BUCKLIN NATIONAL BANK,
*Appellee*,

v.

HAYSE RANCH, et al.,
*Defendants*,

(CELIA PRUITT),
*Intervenor/Appellant*.

SYLLABUS BY THE COURT

1.

When the owner of property assigns the owner's right of redemption in a foreclosure action and the assignee redeems, the assignee obtains all the property rights of the owner upon filing proof thereof in the foreclosure action.

2.

Although a conveyance by deed is the most common way to transfer title to real property, it is not the only way. For example, real property may be conveyed by contract or court order.

Appeal from Kiowa District Court; VAN Z. HAMPTON, judge. Opinion filed September 11, 2020. Reversed and remanded with directions.

*Josh V.C. Nicolay* and *Gordon B. Stull*, of Stull, Beverlin, Nicolay & Haas LLC, of Pratt, for appellant.

*Martin R. Ufford*, of Hinkle Law Firm LLC, of Wichita, for appellee.

1

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.


ARNOLD-BURGER, C.J.:  This appeal involves a dispute over ownership of real property. In 2018, Bucklin National Bank (Bucklin) filed a mortgage foreclosure action against several named defendants, including:  Hayse Ranch, a partnership owned by Helen Hayse and Paul Hayse; Helen Hayse, who died intestate before the filing; Paul Hayse; and Helen Hayse's heirs. About a month after the start of the case, Celia Pruitt intervened in the case, asserting an ownership interest in the property stemming from her purchase and exercise of Helen Hayse's right of redemption in a previous foreclosure case.


The district court granted Bucklin's motion for summary judgment, finding that the assignment and exercise of the redemption rights did not transfer ownership of the property to Pruitt because there was no deed of conveyance. Pruitt now appeals, claiming she obtained legal title to the property under K.S.A. 2019 Supp. 60-2414. She asserts that the assignment gave her the exclusive means of regaining ownership over the property and that no deed of conveyance was necessary to transfer ownership. Because we find that there remains a material issue of fact concerning Pruitt's ownership rights, we reverse the summary judgment ruling dismissing Pruitt from the case and remand for further proceedings.


FACTUAL AND PROCEDURAL HISTORY


In August 2002, L.P.P. Mortgage Ltd. obtained a default judgment of foreclosure against, among others, Helen Hayse and her son Paul Hayse. Although that ruling involved multiple tracts of land, only one is relevant to this appeal:  "[t]he Southeast Quarter (SE/4) of Section Three (3), Township Twenty-nine (29) South, Range Twenty (20) West of the 6th P.M.," in Kiowa County, Kansas (Subject Property). Central Bank purchased the Subject Property at a sheriff's sale in May 2003 for $170,000. The court

2

issued an order confirming the sale and ordered a statutory redemption period of three months.

The day before the redemption period was set to end, Helen Hayse assigned her rights of redemption to Celia Pruitt for the sum of $100. The notarized assignment of rights of redemptions provided that "[t]his Assignment of Rights of Redemption is made pursuant to K.S.A. 60-2414(h) and it is the intent of Helen L. Hayse to assign and transfer to Celia Pruitt the same rights of redemption as to the above described real property that Helen L. Hayse owns." The same day, Pruitt filed a notice of exercise of right of redemption with the district court and deposited $172,685.76—the total owed to Central Bank—to redeem the Subject Property. That notice also stated, "All should take notice that Celia Pruitt is now owner of legal title to the above described real property."

In 2007, Pruitt had her attorney file an affidavit in the Kiowa County Register of Deeds office describing the Subject Property and declaring Pruitt to be the owner of the property by virtue of her acquisition of redemption rights in the prior foreclosure action and exercise of those rights.

In June 2015, Helen and Paul Hayse obtained a series of loans from Bucklin, secured in part by a real estate mortgage on the Subject Property. In January 2017, Helen Hayse died intestate. Ultimately, the Hayses defaulted on the loan and Bucklin initiated foreclosure proceedings in January 2018. Bucklin named several defendants in the petition, including Helen and Paul in their individual capacities, as well as Hayse Ranch—a partnership co-owned by Helen and Paul—and several of Helen's heirs. Bucklin also requested a decree "quieting the title of [Bucklin] against the Defendants and all persons claiming through [them] with regard to all personal property in which [Bucklin] has a security interest."

3

In February 2018, Pruitt moved pro se to intervene and filed an answer to the petition. In the filing, she asserted that she had bought and timely exercised Helen Hayse's right of redemption for the Subject Property in the previous foreclosure action. Pruitt requested an order naming her as the lawful owner of the Subject Property and declaring the same was "not lawfully subject to any liens, mortgages or encumbrances allegedly held by Bucklin National Bank, nor any other person or entity."

*Bucklin moves for summary judgment.*

In June 2018, Bucklin moved for a partial default judgment against the named defendants and, more relevant to this appeal, for summary judgment against Pruitt. The summary judgment motion indicated a hearing would be held in July 2018. In its memorandum in support of the motion, Bucklin noted no deed of conveyance was executed to transfer ownership of the Subject Property to Pruitt and that no Kansas authority supported "[her] position that a redemption alone transfers title of property from a mortgagor to a third party transferee." In contrast, Bucklin asserted that "other states have generally rejected [Pruitt]'s argument," citing 66 Am. Jur., Proof of Facts 3d 267 § 5, and *Fidelity Mutual Savings Bank v. Mark*, 112 Wash. 2d 47, 767 P.2d 1382 (1989). Attached to the summary judgment motion were an Owners and Encumbrances Report identifying Helen Hayse as the vested owner of the Subject Property as of December 4, 2017, as well as documents showing the assignment of Helen Hayse's right of redemption to Pruitt and Pruitt's exercise of that right. We note that the Owners and Encumbrances Report does not contain any information about who prepared it, and it is not signed by anyone. It is not on any corporate or personal letterhead. It also specifically notes that "[t]his report is not nor is it to be construed as, and Abstract of Title, title opinion, or title insurance policy." Yet this is the exhibit Bucklin relies on in its summary judgment motion to establish that Helen Hayse is the "vested owner" of the property.

4

About a month later, Pruitt filed an amended answer and a response to the motion for summary judgment. In the amended answer, she denied that Bucklin had the lawful right to foreclose on the property because she did not sign the purported mortgage and that Bucklin had "actual and adequate notice" of her claim of interest in the Subject Property. Lastly, she asserted that she was also the "rightful owner of the property in question by virtue of the Statute of Limitations and Adverse Possession."

In the response to the motion for summary judgment, Pruitt—filing pro se— denied all Bucklin's claims and asserted that one of the documents included with Bucklin's motion—an affidavit filed in 2007 by Pruitt's then-counsel with the Kiowa County Register of Deeds—"[c]learly stated as a factual matter that [Pruitt] is the lawful owner of the property in question. . . . Therefore, sufficient summary judgment evidence exists to deny Plaintiff's motion." She also asserted that the district court should not consider the Owners and Encumbrances Report because it was hearsay.

The district court issued two orders in July 2018, one granting Bucklin's motions for partial default judgment and one granting summary judgment to Bucklin as against Pruitt. The court foreclosed on the mortgage for the Subject Property; declared Bucklin to have "superior title" as to the "interest of Defendants, their heirs, legatees, devisees, trustees, executors, administrators, successors or assigns, and all person or entities claiming through said defendants"; and set a redemption period of three months.

As to Pruitt's interest, the court found and ordered:

"1.     Based on Plaintiff's Motion and Intervenor's Response, the Court finds there remain no genuine issues as to any material fact and that the Motion can be decided as a matter of law.

"2.     The Court finds that Intervenor's excise of an assigned right of redemption in a previous foreclosure case was ineffective to pass title to the Intervenor,

5

and that absent a document of conveyance, the legal effect of Intervenor's exercise of the right of redemption in the previous foreclosure case was to restore title in the record owner, Helen L Hayse.

"3.     The Court therefore finds that the record owner of this property is Helen L. Hayse, and that the default judgment previously granted in these proceedings is proper.

"4.     Having decided that Intervenor does not have any interest in the real property that is the subject of this action, the Court hereby orders that said Intervenor shall be and hereby is dismissed as a party to this action."

*Pruitt files posttrial motions for new trial and relief from the judgment.*

About a month later, Pruitt, still pro se, filed a pro se motion for new trial, arguing the district court erred in granting summary judgment. Then, in October 2018 after retaining counsel, she filed a motion for relief from the judgment and, over the course of next several months, filed supplemental motions that incorporated the same arguments. In general, Pruitt asserted she was entitled to a new trial or relief from the judgment because (1) Bucklin's motion for summary judgment ignored K.S.A. 2019 Supp. 60-2414, which governs the statutory right of redemption in Kansas, and otherwise relied on improper authorities; (2) there were genuine issues of material fact remaining that precluded summary judgment, since Bucklin had failed to establish its own title or interest in the property; (3) Pruitt was a necessary party that should have been named from the outset and that she was forced to act quickly and intervene pro se, which unfairly prejudiced her and deprived her of a reasonable chance to retain counsel or fully present her arguments; and (4) the district court's summary judgment ruling contained inadequate findings of fact and conclusions of law.

In November 2018, Bucklin responded to Pruitt's postjudgment motions. Bucklin generally disputed Pruitt's allegations contending that Pruitt could have presented the

supporting documents in her pleadings or at the hearing on the summary judgment motion but chose not to. Bucklin also argued that Pruitt was not prejudiced by the initial failure to include her as a party because (1) Bucklin's investigation did not reveal her as a potential owner of the Subject Property; and (2) Bucklin did not contest Pruitt's intervention and she was allowed to fully participate in the case. Lastly, Bucklin argued that none of the documents included or facts alleged in Pruitt's motions altered the legal question of whether an assignment of redemption rights without a deed of conveyance transfers ownership to the assignee. And because Pruitt cited no controlling authority on that point, Bucklin asserted that the court correctly granted summary judgment in its favor.

Ultimately, the district court held a telephonic hearing in May 2019 and denied Pruitt's motions for new trial and relief from the judgment. The court stated:

> "Basically the argument, I guess, that I'm hanging my hat on is that it does not appear that there was ever evidence presented of an actual transfer of ownership right. I do understand the arguments in regards to the redemption—the assignment of redemption— and I do not believe that that fact is actually controverted anywhere, that I don't believe that Ms. Kuhns' client is actually arguing against that, but I don't see anywhere in the record or in any of the briefs that have been provided that there was actually a transfer of ownership and so I do not believe that there was still that fact in contention and so I am going to uphold the prior order for the summary judgment."

Pruitt's counsel then orally requested the district court to clarify its findings in a written order, which the court directed Bucklin's counsel to prepare. The court then noted "there is not any binding authority that the Court can see that shows that there was anything provided into the record of a transfer of ownership." Pruitt's counsel asked if the court had considered the evidence of lease agreements and loan documents establishing Pruitt as the owner of the property, and the court responded:

7

"I did. I considered everything that was submitted. However, there was nothing to show what they were relying on in regards to that. There is no—There is no proof of a conveyance of ownership. Just because they relied on it does not mean that they were not mistaken in their reliance, so there's nothing in the court record to show that that was actually done, that there was a conveyance of the ownership interest."

After the hearing, the district court issued a journal entry finding:

"1.    Intervenor received adequate notice of all hearings.
"2.    As a matter of law, Helen Hayse's assignment of her right of redemption and Intervenor's exercise of the assigned right of redemption did not put Intervenor into title of the subject property.
"3.     Intervenor's Motions are therefore denied, and the previous Journal Entry of the Court granting Plaintiff's Motion for Summary Judgment is upheld."

So in the end, the district court quieted title in the property to Bucklin and dismissed Pruitt from the case as having no interest in the property.

Pruitt appeals.

ANALYSIS

As to Pruitt, this is an action to quiet title filed by Bucklin. To prevail, Bucklin has the burden to establish its superior title. Bucklin must rely on the strength of its own title, and not the weakness of Pruitt's title. *Ford v. Willits*, 9 Kan. App. 2d 735, 745, 688 P.2d 1230 (1984), *aff'd* 237 Kan. 13, 697 P.2d 834 (1985).

Pruitt asserts that exercising her assigned right of redemption in the Subject Property in 2003 transferred ownership to her, thereby making her the rightful legal owner when Bucklin obtained a mortgage from Helen Hayse over the property in 2015. See K.S.A. 2019 Supp. 60-2414. In response, Bucklin contends that because there was no

8

deed of conveyance to transfer ownership to Pruitt, the redemption merely cancelled the previous foreclosure sale and restored ownership in Helen Hayse, thus making Pruitt's dismissal from the foreclosure action appropriate.

*Our standard of review is de novo.*

The party moving for summary judgment must show, based on "the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations" that there are no disputes as to any material fact and that they are entitled to judgment as a matter of law. K.S.A. 2019 Supp. 60-256(c)(2); *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018). Because the facts are not in dispute, our review is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). And to the extent we must resolve issues involving statutory interpretation, we exercise unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Here, Bucklin argues that Pruitt cannot prove a material fact, specifically her ownership of title to the property subject to this foreclosure action. So let us begin with a discussion of the material facts regarding Pruitt's ownership.

*The material facts as to Pruitt's claim of ownership are undisputed.*

To start, Bucklin has never challenged:

(1) the validity of Helen Hayse's assignment of her redemption right to Pruitt;
(2) Pruitt's timely and proper exercise of that assigned right; or
(3) the affidavit filed with the Kiowa Register of Deeds affirming her actions and again declaring her ownership interest.

9

The court also considered in its affirmance of its summary judgment ruling:

(4) a long-term lease agreement that Paul Hayse entered into over the same property on March 17, 2004, acknowledging that Pruitt was the owner;
(5) a United States Department of Agriculture Farm Service Agency Report listing Pruitt as the owner of the property.

Bucklin does not challenge the existence of these agreements but argues that they are not evidence of title "any more than [Bucklin's] owners and encumbrances report." It should be noted that Bucklin's owners and encumbrances report is the only evidence it presented as to the "vested" ownership interest of Helen Hayse. These could be interpreted as Bucklin's acknowledgment that it has failed to establish the strength of its own title.

Bucklin argues that Pruitt is not entitled to relief as a matter of law because assigning redemption rights does not transfer ownership to an assignee unless there is an accompanying deed of conveyance. Bucklin asserts that assigning one's statutory redemption rights transfers only a limited property interest. The assignee only obtains possession rights and a right to receive rents and profits during the redemption period. In Bucklin's view, exercising the assigned redemption right canceled the sale but did not transfer title to Pruitt since there was no deed of conveyance and the assignment did not explicitly state that Hayse was transferring her title to the Subject Property. As a result, Bucklin asserts the title was restored in Helen Hayse.

Pruitt agrees that this case presents a legal question but asserts that K.S.A. 2019 Supp. 60-2414 governs the statutory right of redemption in this state and she has complied with the statute and has the same property rights as Hayse would have had if she had redeemed—full title. In Pruitt's view, when a defendant owner assigns or transfers a statutory right of redemption to a third party—as Helen Hayse undisputedly

10

did here in 2003—the owner has chosen to transfer their *only* remaining interest in the property because the assignee is now the holder of the exclusive redemption rights. So by exercising the assigned right of redemption, Pruitt became the legal owner of the property. As a result, she agrees that the only question resolved by the district court was a legal one: whether Pruitt was required to show a deed of conveyance in order to establish her superior right to the property.

*A statutory right of redemption is different than the common law equitable right of redemption.*

*The equitable right of redemption arises* before *the foreclosure sale.*

At common law, a borrower's right after a default to perform his or her obligation under the mortgage was known as the "equitable right of redemption." Restatement (Third) of Property (Mortgages) § 6.4, comment a (1997). Basically, the borrower could pay the remaining balance any time *before* a valid foreclosure and restore title in the property free and clear of the mortgage. See Black's Law Dictionary 1530 (11th ed. 2019) (defining "redemption" in the property context as "[t]he payment of a defaulted mortgage debt by a borrower who does not want to lose the property"). When a borrower or someone who is "primarily responsible" for the debt exercises this right, the mortgage is extinguished, and the redeeming party receives ownership of the property. Restatement (Third) of Property (Mortgages) § 6.4(a) (1997). In contrast, a payment by someone who is not "primarily responsible" for the mortgage debt *does not* extinguish the mortgage or redeem the property, but "entitles the person performing to subrogation to the mortgage." Restatement (Third) of Property (Mortgages) § 6.4(e) (1997). In other words, that person essentially purchases the foreclosing lender's interest, and steps into their shoes as a new mortgagee or lender. After a valid foreclosure, the equitable right of redemption was no longer available.

11

*The statutory right of redemption arises* after *the foreclosure sale.*

But many states, Kansas among them, have created a statutory right of redemption. Black's Law Dictionary 1709 (11th ed. 2019), defines the statutory right of redemption as "[t]he right of a [borrower] in default to recover property *after a foreclosure sale* by paying the principal, interest, and other costs that are owed, together with any other measure required to cure the default." (Emphasis added.) Thus, a statutory right of redemption arises *after* the foreclosure sale. Generally, these statutes allow a borrower or others claiming a property interest to redeem the property from the sale by paying the purchaser the sale price. The right of redemption may be assigned to another. See *Southwest State Bank v. Quinn*, 198 Kan. 359, 361, 424 P.2d 620 (1967). The purpose of redemption statutes is to protect judgment debtors from unfairly low bids at foreclosure sales. They provide protection by "pos[ing] an economic threat to prospective purchasers, including the creditor, that an artificially low bid can be defeated by redemption." *United States v. MacKenzie*, 510 F.2d 39, 41 (9th Cir. 1975).

The district court here concluded as a matter of law that Pruitt had no remaining interest in the Subject Property because the legal effect of her exercising the assigned statutory right of redemption was to restore Helen Hayse's ownership in the Subject Property. The court based this conclusion on the lack of a deed of conveyance transferring the title to Pruitt. Because redemption after the property is sold at foreclosure is governed by statute in Kansas, resolving this dispute necessarily requires examining statutes governing redemption and the conveyance of real property in Kansas.

*An assignee of a property owner's redemption rights obtains all the property rights of the owner upon exercise of the assigned redemption rights.*

A defendant owner (borrower) may assign or transfer their statutory redemption rights "and the assignee or transferee *shall have the same right of redemption as the*

12

*defendant owner*." (Emphasis added.) K.S.A. 2019 Supp. 60-2414(h). We interpret this to mean that the assignee obtains all the property rights of the owner upon exercise of the redemption right. We do so for two reasons.

First, we examine the plain meaning of the statute as evidenced by the words the Legislature used.

We begin with the phrase that the assignee "shall have the *same* right of redemption as the defendant owner." (Emphasis added.) K.S.A. 2019 Supp. 60-2414(h). The word "same" is defined as "being the very one, identical; . . . alike in kind, quality, amount, or degree, [or] unchanged; not different." Webster's New World College Dictionary 1284 (5th ed. 2014). Under the language in the statute and considering the purpose of the statutory right of redemption, an assignee who receives a redemption right that is not identical or unchanged would not receive the "same right of redemption as the defendant owner." K.S.A. 2019 Supp. 60-2414(h). If the assignee can only regain the property on behalf of another, then they would not have the "same" right of redemption as the defendant owner. In other words, an assignee of a statutory right of redemption can obtain ownership over property lost in a foreclosure sale because they essentially step into the shoes of the defendant owner and have a right to possess and receive any proceeds in order to allow them to redeem the property. See *Home State Bank v. Johnson*, 240 Kan. 417, 428, 729 P.2d 1225 (1986).

Next, we look at what is meant by the "right of redemption." The right to redeem is merely the right of the borrower to reassert complete fee simple ownership of the land upon payment of the debt. 55 Am. Jur. 2d, Mortgages § 787; see *Southwest State Bank*, 198 Kan. at 361 ("The statutory right of redemption is the right a judgment debtor has to regain property he has lost by sale under process."). So the assignment of the "right to redeem" that is the same as that of the defendant owner, would allow the redemptioner to obtain fee simple title. See *VOSR Industries, Inc. v. Martin Properties, Inc*, 919 So. 2d

13

554, 557 (Fla. Dist. App. 2005) (finding that where mortgagor assigned rights of redemption to third party, who then exercised the right and tendered full amount due, third party was entitled to receive certificate of title from the court clerk); 2 Patton and Palomar on Land Titles § 483 (3d ed.) ("Any sheriff's deed, or other conveyance issued as a result of the sale, will pass to the last redemptioner the same title which the purchaser would have received if no redemption had been made."). Finally, a mortgage foreclosure sale terminates the relationship between borrower and lender. The mortgage lien merges into a decree foreclosing it. *Exchange State Bank v. Central Trust Co.*, 127 Kan. 239, 243, 273 P. 477 (1929). But until the redemption period has expired and the sheriff's deed is issued to the purchaser at foreclosure sale, the borrower retains title to the property. *Motor Equipment Co. v. Winters*, 146 Kan. 127, 135, 69 P.2d 23 (1937). The borrower holds the legal title in trust for the purchaser during the redemption period and the record of the foreclosure proceedings is constructive notice of the equitable title acquired by the purchaser at the foreclosure sale. *Union Central Life Ins. Co. v. Reser*, 134 Kan. 876, 880, 8 P.2d 366 (1932). The statutory right of redemption, in turn, is the right a judgment debtor has to regain property he or she has lost by sale under process. *Southwest State Bank*, 198 Kan. at 361. Redemption of the property extinguishes the equitable title acquired by the purchaser and restores title to the redemptioner—in this case, Pruitt.

Similarly, under the language of the following section, K.S.A. 2019 Supp. 60-2414(i), the "holder of the legal title" has the "same" right of redemption as the defendant in execution. In situations where the "holder of the legal title" is some other person than the defendant in execution in a judicial foreclosure sale, the statute explicitly provides that *either person* can redeem the property. K.S.A. 2019 Supp. 60-2414(i). The Kansas Supreme Court recognized the holder of the legal title does not have the sole right of redemption in *Mercer v. McPherson*, 70 Kan. 617, 619, 79 P. 118 (1905).

In *Mercer*, the Kansas Supreme Court considered a dispute over who had the right to redeem after a judicial foreclosure sale. McPherson had purchased half of a tract of

14

land from his father in 1893, with the entire property subject to a mortgage. After McPherson had the mortgage renewed in 1897, his father purported to convey the title to another, who in turn conveyed it to Mercer. Mercer brought a quiet title action a few years later, naming the owner of the mortgage as a party. Ultimately, the mortgage was foreclosed, and the property was sold at a foreclosure auction. McPherson moved to set aside the sale, while Mercer sought a ruling giving him the right to redeem the property. The court confirmed the sale and concluded that McPherson was entitled to the right of redemption.

On appeal, the Kansas Supreme Court noted the proceedings below were "unusual" but that "[t]he court, however was required to decide who had the right of redemption, and that depended upon ownership." 70 Kan. at 618. The Kansas Supreme Court affirmed the trial court's ruling, determining that McPherson "had acquired the equitable title and an ownership which [his father] had never undertaken to forfeit, and of which Mercer was bound to take notice" because he had "otherwise obtained and exercised ownership of the land" over the years. 70 Kan. at 619.

Regarding the redemption statute, the court explained:

"While the holder of the legal title is expressly mentioned in this section *it is not provided that he shall have the exclusive right of redemption*. That such was not the intention of the legislature is manifest from the language of the following section, which mentions the assigns of the defendant in execution or order of sale in a class distinct from the holders of the legal title and places them upon an equality of right with the holders of the legal title.

"The rights of assigns and purchasers are also recognized in the preceding section, and in other sections it is provided that a purchaser of an interest may redeem, where no restriction is made with respect to the legal title. The theory of the act relating to redemption is that the owner of a substantial interest, whether or not he is a defendant, may redeem from an execution or mortgage foreclosure sale, and the like protection is

15

also afforded to creditors, mortgagees, and other lien holders. *The owner of an interest, although he may have no formal conveyance, is more entitled to exercise the right than one holding a naked legal title.* The interest and right held by McPherson were certainly paramount to those of Mercer, who took his deed *with notice* of McPherson's rights. [Citations omitted.]" (Emphases added.) 70 Kan. at 619-20.

In other words, with respect to a property that has been sold at a judicial foreclosure sale, the "holder of the legal title" to the foreclosed property does not have a superior right of redemption to others with an interest in the property. Like any assignees or transferees holding under the defendant's interest, under the language of the statute, the redemption rights shall be the "same."

Although Hayse was both the "holder of the legal title" and the defendant in execution at the time of the 2003 foreclosure action, she had two ways to transfer her redemption rights. First, she could have issued a formal deed of conveyance, which obviously did not occur. Second, she could assign or transfer her redemption rights, which undisputedly occurred. The effect of that assignment without a formal deed of conveyance was that Pruitt could redeem the property despite Hayse still being the "holder of the legal title." And just like how a purchaser acquires equitable title after a judicial foreclosure sale, an assignee or transferee like Pruitt would receive equitable title as well. See *Union Central Life Ins. Co.*, 134 Kan. at 880. We see no difficulty in extending the reasoning in *Mercer* to the facts presented here. Upon assigning her redemption rights to Pruitt, Pruitt had the statutory right to redeem. By exercising that right and filing the necessary paperwork with the court, Pruitt became the undisputed owner of the property the same as if Hayse had redeemed the property herself. This is also the same interest as would become vested in the purchaser at sale if no party had redeemed.

16

Second, Bucklin asserts that notice in a foreclosure action of the exercise of the right of redemption—by the only person that has that right—is an act of charity to the benefit of the debtor. But if a person simply wanted to pay off someone's mortgage, he or she would not need to do so by obtaining redemption rights. The person could simply provide the person with the money directly as a gift or a loan so the owner can redeem the property themselves. The statutory right of redemption is a "valuable right" and, accordingly, it is one which may be assigned and transferred. *Southwest State Bank*, 198 Kan. at 361. If it is to be of value to the assignee, it must necessarily not only serve to extinguish the debt, but to vest title in the redemptioner—just as it would the debtor when exercised or the purchaser at foreclosure sale when the right to redemption is not exercised. There would be no reason to treat an assignee redemptioner any differently. In fact, the statute says the assignee shall have the same rights as the debtor. K.S.A. 2019 Supp. 60-2414(h).

That said, did Pruitt still need a deed of conveyance to vest title—as Bucklin argues and the district court concluded? So we turn to examine whether a deed is necessary to convey real property.

*There are several ways to transfer an interest in real property in Kansas.*

A conveyance, as it relates to property, is defined as the voluntary transfer of property or the transfer of a property right that does not pass by a delivery of a thing or merely by agreement. Black's Law Dictionary 421 (11th ed. 2019). Although a conveyance by deed is the most common way to transfer title to real property, it is not the only way. See K.S.A. 58-2205 ("[c]onveyances of land . . . *may* be made by deed" [emphasis added]); K.S.A. 58-2209 ("[a]ll deeds or *other conveyances of lands*" [emphasis added]). But there are some general rules regarding conveyances of real property.

17

- Title to real property must be conveyed in writing. K.S.A. 33-106.
- All conveyances of land must be notarized or acknowledge by a county clerk, city clerk, or register of deeds. K.S.A. 58-2211.
- A written conveyance is not valid as to others besides the parties until it is deposited with the register of deeds. K.S.A. 58-2223.
- Every conveyance of real estate shall pass the entire estate of the grantor "unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." K.S.A. 58-2202.
- The use of technical operative words of conveyance are not necessary; words that express intention to transfer property may be sufficient. The use of the words "'assign and set over' indicate an intention by the grantor to transfer property to the grantee." *Bryant v. Fordyce*, 147 Kan. 586, Syl. ¶ 2, 78 P.2d 32 (1938).

Moreover, a person is not required to hold the legal title to have a superior right to property. "All that is necessary to entitle him to recover is, that he shall have some kind of an estate in the property in controversy, legal or equitable, and that his title to the property shall be paramount to that of the [holder of legal title]." *Riggs v. Anderson*, 47 Kan. 66, 69, 27 P. 112 (1891). But "[t]itle to real estate cannot remain in abeyance; it must be vested in someone." *Carter v. Wroten*, 187 S.C. 432, 435, 198 S.E. 13 (1938).

A judgment entered by a district court may serve as a conveyance of real property.

"Whenever any decree or judgment entered by a district court has become final and such decree or judgment shall change the ownership or the title to real estate, the clerk of the district court shall file with or exhibit to the county clerk of the proper county the original or a certified copy of such decree or judgment, for entry upon the transfer records of the clerk's office." K.S.A. 58-2242a.

18

For example, rights to real estate can be adjudicated as an incident to the dissolution of a marriage. A court order can act as a conveyance. See K.S.A. 2019 Supp. 23-2802; 24 Am. Jur. 2d, Divorce and Separation § 460; Kansas Title Standards, § 8.6 (8th ed. 2017) (quitclaim not needed when court awards real property all to one spouse in divorce). Similarly, when a person who owns real estate dies intestate, the title to such real estate vests at once in any surviving heirs by statute. See K.S.A. 59-502. And the probating of a will can result in orders from the court related to real property. See K.S.A. 2019 Supp. 59-2249.

Property can also be transferred by way of a foreclosure action. *Union Central Life Ins. Co.*, 134 Kan. at 880 (The borrower holds the legal title in trust for the purchaser during the redemption period and the record of the foreclosure proceedings is constructive notice of the equitable title acquired by the purchaser at the foreclosure sale.). Redemption of the property extinguishes the equitable title acquired by the purchaser and restores title to the redemptioner. This would also be evidenced in the journal entry of the foreclosure proceeding, as it was in the 2002 case, also in Kiowa County, noting Pruitt's exercise of redemption rights. Although the Kansas Title Standards do not have the force of law, they are a recognized guide by Kansas title examiners and represent the collective wisdom of the authors' research and practical experience. The authors recognize that proof of the assignment of redemption rights filed in the foreclosure action establishes proof of title in the redemptioner. Kansas Title Standards, § 15.10b (to establish proof of title when assignee of the defendant owner redeems, need either a deed from the owner to the assignee or proof that the assignment of redemption rights is filed in the foreclosure action).

In addition, a contract may convey property.

"In order for a contract to legally transfer title to real estate absent a deed, the contract must contain all the essential elements necessary to convey land pursuant to a deed, *i.e.*,

19

the parties must be sufficiently designated and identified, the contract must be based upon ample consideration, the property must be accurately identified by governmental description, the contract must contain operative words of grant, and the instrument must be signed and acknowledged by all the parties." *Wise v. Bailey*, No. 115,583, 2017 WL 2610760, at *4 (Kan. App. 2017) (unpublished opinion).

In that regard, family settlement agreements have been found to be a proper contractual vehicle to convey property. *Brent v. McDonald*, 180 Kan. 142, 152, 300 P.2d 396 (1956). In reviewing such conveyances, all rules of contract interpretation apply including a determination by the court regarding any ambiguity in the contract. See *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992) ("Whether an instrument is ambiguous is a matter of law to be decided by the court.").

Here, Hayse assigned her redemption rights to Pruitt on August 1, 2003, and on the same day Pruitt redeemed the property for the full amount owing. Pruitt filed the assignment and the notice of redemption—both notarized and containing the legal description of the property—the same day. Hayse clearly intended for Pruitt to receive her redemption rights pursuant to the statute, and it was Hayse's intent to "assign and transfer to Celia Pruitt the same rights of redemption as to the above described property that Helen L. Hayse owns." Pruitt included a statement in the notice of redemption filed with the district court that "[a]ll should take notice that Celia Pruitt is now owner of legal title to the above described property." Subsequently—before Bucklin ever loaned Hayse any money—Pruitt caused to be filed, in the Register of Deeds office in Kiowa County, notice that she became the owner of the property as part of a 2002 foreclosure action by acquiring the redemption rights and exercising those rights. The foreclosure case was identified by name, case number, and court, the affidavit was signed and notarized, and the property was particularly described.

If Pruitt can establish that she obtained title to the property based on the contract of assignment and on the filing of the contract and exercise of her redemption rights as

20

noted in the court's journal entry from the foreclosure action, she could prevail without presenting a deed of conveyance. Accordingly, the mere fact that Pruitt had no deed of conveyance to the property did not, as a matter of law, require a finding that she had no interest in the property as it relates to the current foreclosure. Even if it were only an equitable title, a person may recover on the strength of an equitable title only, even though another holds the legal title. *Stout v. Hyatt*, 13 Kan. 232, 241, 1874 WL 720 (1874). An equitable title gives its holder the *right* to acquire formal legal title. See Black's Law Dictionary 1788 (11th ed. 2019).

Moreover, Pruitt also made an alternative claim to ownership through adverse possession that was not addressed by Bucklin or the court. "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." K.S.A. 60-503. Pruitt obtained the assignment of rights from Hayse and filed it with the court on August 1, 2003. She also filed her notice of exercise of right redemption with the court on August 1, 2003. She intervened in this lawsuit asserting her ownership to Bucklin on February 20, 2018. Summary judgment was granted foreclosing her interests on July 7, 2019. There is no indication in the record on appeal that the Hayses ever challenged Pruitt's right to ownership, in fact the evidence is to the contrary. Whether she is entitled to have title quieted in her favor due to adverse possession is a material issue of fact that still must be decided. See *Crone v. Nuss*, 46 Kan. App. 2d 436, 442, 263 P.3d 809 (2011) ("Whether title is acquired by adverse possession is a question of fact.").

*The authority upon which Bucklin relies does not pertain to the Kansas statutory right of redemption.*

Bucklin only included two legal authorities in support of its motion for summary judgment, and neither accurately reflect the law in Kansas pertaining to the statutory right of redemption.

First, Bucklin asserted that

"other states have generally rejected [Pruitt]'s argument. As noted in the American Jurisprudence Proof of Facts Third, courts in other states have held that in order for an assignment of a right of redemption to be valid, it must also be accompanied by a 'transfer of a legitimate property interest from which the right of redemption could be claimed.' [Citation omitted.]"

That generalized statement ignores the full context of the entire section from which Bucklin quoted. The passage also provides:

"The statutory redemption schemes of many states generally allow transfer of the right of redemption by assignment. In a number of cases, the courts ruled that a valid assignment of redemption rights was accomplished where the assignor of those rights also transferred a legitimate property interest from which a right of redemption could be claimed. Where an assignor transfers all of his interests in the foreclosed property, the assignee's right of redemption is, however, limited to the right possessed by the assignor at the time of the assignment. Some courts have considered whether or not a right of redemption may be assigned or transferred separately from the underlying mortgage, ruling for the most part that it may not." 66 Am. Jur., Proof of Facts 3d 267 § 5.

So based on this passage, Bucklin's assertion that an assignment of a right of redemption "must also be accompanied by a 'transfer of a legitimate property interest from which the right of redemption could be claimed,'" appears to be contrary to Kansas

22

law. The Kansas statutory right of redemption specifically allows for the transfer or assignment of a defendant owner's redemption rights, with no mention of a requirement that the assignor transfer their full property interest as well. K.S.A. 2019 Supp. 60-2414(h). As discussed below, the assignee of a statutory redemption right in Kansas effectively receives a "legitimate property interest" because of the assignment since the assignee now holds exclusive rights to redeem the foreclosed property.

The second authority mentioned in Bucklin's summary judgment motion is *Fidelity Mutual v. Mark*, 112 Wash. 2d 47, 767 P.2d 1382 (1989). In that case, the Washington Supreme Court held that a judgment debtor may not transfer a statutory right of redemption without also transferring their underlying interest in the property. 112 Wash. 2d at 52-53. Relying on this case is troublesome because redemption laws vary in at least one material respect in Kansas and Washington.

Kansas law authorizes a defendant owner to transfer or assign their right of redemption separately from their full interest, while Washington takes a different approach. See K.S.A. 2019 Supp. 60-2414(h); Wash. Rev. Code § 6.23.010. The Washington redemption scheme allows the "judgment debtor" and lien creditors to redeem, as well as their "successors in interest." Wash. Rev. Code § 6.23.010. The Washington Supreme Court determined that a "successor in interest" must "succeed to the judgment debtor's interest in the property." *Fidelity*, 112 Wash. 2d at 52. Washington also requires a conveyance of real estate or any related interests to be done by deed. Wash. Rev. Code § 64.04.010. As for this latter requirement, as we have already explained, Kansas does not require a deed when conveying real estate. See also K.S.A. 58-2209 ("All deeds or *other conveyances* of lands, or of any estate or interest therein, shall be subscribed by the party granting the same . . . and *may be acknowledged or proved and certified* in the manner prescribed by the uniform law on notarial acts and K.S.A. 58-2216 and amendments thereto." [Emphasis added.]).

23

In short, to the extent that the district court may have relied on the authorities cited in Bucklin's motion for summary judgment, that reliance was in error.

Because there is no support in the law for a finding that conveyance of real property may only be accomplished by a deed, as determined by the district court, and because Pruitt also has an adverse possession claim that must be considered, we reverse the district court's decision to grant Bucklin's motion for summary judgment and remand for further proceedings.

Reversed and remanded with directions.